Ruffin, C. J.
 

 There are only two questions of any consequence in these causes. The one is, whether Joyner and Ferrall, who were two of the original sureties for Mrs. Hawkins’ administration, remain liable to contribute to the payment of this judgment, in exoneration of their original co-sureties, or of the plaintiff, as one liable to their responsibilities and entitled to their rights. Upon that point, we have not much to add to what was said on it in the opinion given in
 
 Hawkins
 
 v.
 
 Hall,
 
 3 Ired, Eq. 880. It appears distinctly now upon the present bill, that Joyner and Ferrall are the owners of the judgment at law; Mr. Hall having assigned it to a trustee for them. The object, then, in the former equity cause, was to obtain a perpetual injunction against the judgment, upon the ground, that by the acts of Joyner and Ferrall, in conducting their execution against the body of Hawkins, the debt was satisfied, and therefore those two persons could not equitably raise their shares from the co-sureties, who
 
 *519
 
 Were plaintiffs in that suit, nor eten raise the whole from the principal debtor, Hawkins. We need not perplex ourselves' with considering the extent of the rights and obligations of the parties to that bill and of the sureties for the injunction, if it had been a bill by one portion of the sureties against another merely. For that was not the case. Hawkins was one of the plaintiffs in the bill, and, besides occupying the character of one of the co-sureties, he filled that of principal; having married the administratrix,- and in her right got the possession of the assets, and then wasted them. Unquestionably, then, he had no right to contribution from the original co-1 sureties; fvho were the defendants, nor from any who united with him in the suit. But upon a dissolution of the injunction, if he had been the sole plaintiff, the defendants in equity would have had a right to a decree against him and
 
 his
 
 sureties on the injunction bond for the whole debt, without abatement. Now, because, the' other persons, who were also sureties in the administration bond, happened or chose to join with him in that suit, it did not release him from the obligation to pay the whole, or impair the rights the defendants would have had against him, if he had sued alone. On the' contrary,- by their joining in a common suit and injunction bond, each and all of those plaintiffs undertook that what may be decreed against each or any of them, shall be paid by him or them, against whom it is decreed, or that the others will pay it. Therefore each one of the obligors in the injunction bond is Surety for each and all of the others; and, in respect to this debt, they, severally and as a body, engage with Joyneí and Ferrall, that they will make the liability of any one and each of the plaintiffs in the suit a common one upon them all. They sink their character of co-sureties with Joyner and Ferrall for Mrs. Hawkins, and assume the new one of joint and several sureties for Hawkins himself to Joyner and Ferrall. Therefore those' of the sureties, who joined in the bond with Hawkins for the injunction between them and the other two original sureties, Joyner and Ferrall, thereby made this debt their own, because it was exclusively a debt of Hawkins
 
 *520
 
 those persons, and he was bound to pay them the whole
 
 tii
 
 it without abatement. They were endeavoring to aid Hawkins in throwing the whole loss of it upo'n Joyner and Ferrall; ancj jn (j0¡ng so they took the risk, in case of failure, of the whole loss falling on themselves, as it has done.
 

 We are cle&Hy of opinion, that the plaintiff’s construction 'of the deeds of trust to Pettway is the proper one. At law a party, who claims under an indemnity, must necessarily, shew that he has been damnified ; for, until that, he has no right to the money, and the law will not trust him with the application of it, as he might not make it, and then the original debtor would still be bound for the demand. But there is no such impediment to the action of the Court of Equity, for here the application of the money to its ultimate destination may, under the direction of the court, be immediate, without passing through the hands of the party indemnified. . And as it is manifestly jnst, that one, who holds a fund for the indemnity of another, should not keep it back to the prejudice of the other, and to serve no good purpose of the owner of the fund,- or of the party entitled to the indemnity, there can be no plainer equity, than that which compels him to apply it promptly.The trust is to be executed in the spirit in which it was created, for the equal benefit of all the
 
 cestui qu'e trusts-,
 
 and not So, by sticking to the letter, as to exclude ofie, merely to enlarge the dividend of another. It is true, that Gary and Simmons, and all the other plaintiffs in the former suit, who gave the injunction bond, are principals to the present plaintifF, who became the surety of all bf them jointly ; and therefore he Could look to Gary alone. But he could not do so in conscience, any more than he could claim the whole indemnity from Simmons. It would not be right and equitable to act so by either; hut he' is properly endeavoring to' obtain from each a contribution precisely in the same proportion, in which in ’equity they would be decreed to pay the debt, as between themselves, tailing into consideration the insolvency of the principal, Hawkins-, and some of the co-plaintiffs. Still there will probably-bé a deficiency in the assets of the' Simmons’ to
 
 *521
 
 pay their shares, which will, of course, fall on Gary, who is bound, as long as he has means, to protect the plaintiff from ultimate loss. We should thus have thought, if the question was upon the first provision of the deeds, “ to save W. W. Daniel harmless.” But the maker of the deed seemed to be aware of the keen casuistry of losing creditors and sureties, and to remove all doubt of his intention, he expressly provides for the relief of those sureties, “ tvho may be threatened with loss.” Therefore the proper proportion of the trust fund, to which the plaintiff would be entitled against Simmons, if he' had paid the debt, must be ascertained, and the trustee direct2' ed to' apply it in exoneration of the plaintiff.
 

 We do not perceive any misapplication of the funds in the' hands of Joyner, as receiver, according to his answer, inas-’ much as the debts, to which he has applied that money, are' the common debts of all
 
 the
 
 sureties, whereas we have seen that the present debt, as far as Joyner and Ferrall are concerned, has been made the separate debt of the other parties, though’ among themselves, as a portion of the original sureties, it is still to be regarded as the debt bf the principal. But be that as it may, this fluid furnished no reason for keeping up the injunction, for two reasons. One is, that Joyner is to admin2 ister it under the direction of the court, which appointed him to the office of receiver; and there the plaintiff’s' application will be properly made. The other is, that the answer states there is nothing in hand from it, and the defendants ought not to be tied up until it can be collected. Let the plaintiff' pay the debt now, as it is due; and if he be entitled to any thing from the receiver, when the fund comes into court, he will get his share. The same may be said in respect to the residue of the fund received from Purnell. When in hand, it must be applied. Of course the plaintiff is entitled to his decree against Gary and Bond; and the extent of the decree against the former will depend upon the res'uít of an inquiry, (if asked for) as to Bond’s ability to discharge his own share of the iia-» bility.
 

 
 *522
 
 Our opinion on the appeal from the order dissolving the injunction is, that it is not erroneous ; and upon the hearing, the decree is to be according to the directions herein given.
 

 Per Curiam, Decree accordingly.