J. D. SEEBERGER v. JOHN WYMAN, Receiver, *et al.*

**Bonds Enforceable as Stay Bonds:** VALIDITY. A bond conditioned for the payment of the price of property sold by order of court, in such sums as the court may direct, and providing that, in case of default, it is to have the force and effect of a stay bond, and execution may issue against the obligors, is a valid obligation,

enforceable by an action, as the provision giving it the force of a stay bond, etc., applies only to the remedy, and is not, by its terms, made the exclusive remedy.

WHERE VOID IN PART. Whether such provision, giving it the force of a stay bond, is invalid, is immaterial, since, if invalid, it does not affect the remainder of the bond.

CONSTRUCTION. Where the obligation of a bond to a receiver is to pay whatever sums the court requires, not exceeding a specified amount, the receiver cannot complain of the refusal to allow him the full amount of the bond.

ATTORNEY FEES. An obligee, in an action on a bond, cannot have judgment for attorney's fees, where he failed to show that he is entitled thereto.

INDEMITY TO SURETY: *Consideration.* An agreement to save a surety harmless, if he would execute a bond, made to induce the surety to sign, is not without consideration.

LAW PARTNERS AS OBLIGORS: *Scope of business.* An agreement by a partner in the name of his firm, engaged in the practice of law, to save a surety harmless if he would execute a bond in a case in which the firm was engaged, being outside the scope of the partnership business, is not binding on a partner who did not authorize or ratify the signature.

EVIDENCE OF AUTHORIZATION BY PARTNER. A partner in a law firm executed an agreement, in the name of the firm, to indemify a surety if he would execute bond in a case in which the firm was engaged. Another partner had control of the litigation, but testified that he did not know of the instrument until after it was given. The former testified that he obtained the surety at the latter's request, and that they discussed the matter before and after the security was given. The principal was unable to secure the bond, and applied to the firm to obtain it, and it was agreed that he would pay them to do so. *Held,* sufficient to charge such partners with liability.

RIGHT OF ACTION: *Judgment against surety.* A surety is not precluded from maintaining an action to ascertain the liability of others on an agreement to save him harmless, because no judgment had been rendered against him on his obligation, where, by the bond, his obligation was fixed by a judgment against his principal.

RELEASED BY APPEAL A surety on a bond executed to a receiver, in an action for payment of such judgment as the court might direct, is not released by his principal taking an appeal, where he knew that the appeal was taken, and assented, thinking it might release him, and where it was not authorized or assented to by the receiver.

*Appeal from Polk District Court.*—HON. W. F. CONRAD,
Judge.

MONDAY, MAY 22, 1899.

ACTION in equity to ascertain the liability of the plaintiff on a certain written instrument, to ascertain the liability of the defendants Cole, McVey, and Cheshire on another written instrument, and for other relief. There was a decree, from which all parties excepting Thomas A. Cheshire, R. F. Young, administrator, and Will Scoville, appeal. The record does not show the order in which the appeals were taken.—*Affirmed.*

*C. C. & C. L. Nourse* for J. D. Seeberger.

*Bowen & Brockett* for John Wyman.

*C. C. Cole* pro se.

*Thomas A. Cheshire* pro se.

ROBINSON, C. J.—The transactions out of which this action grew are as follows: Prior to September, 1890, Eliza Laing and Will Scoville were partners in the plumbing business. Eliza Laing died, and R. F. Young, as administrator of her estate, brought an action in the district court of Polk county for the settlement of the partnership affairs. In December, 1890, John Wyman was appointed receiver, with authority to take possession of the partnership property, and in the same month the district court authorized him to sell the property on terms stated as follows: "The purchaser will be required to pay twenty-five per cent. of purchase price in cash or certified check; and for the remaining seventy-five per cent., the purchaser will be required to give bond, with sureties to be approved by the court, for the payment of the balance of the purchase price, at such time as the

court shall hereafter order and direct, and bond will have the force and effect of a stay bond, upon which the court will order execution to issue in default of payment, in pursuance of its orders to be hereafter made." The property was sold to the surviving partner Scoville, one-fourth of the purchase price was paid by him, and a bond signed by himself as principal, and the plaintiff Seeberger and others as sureties, was given for the remainder. The bond was entitled as in the case of the administrator against Scoville, and contained the following: "Whereas, an action was begun in this court at the September term, 1890, for settling partnership interests; and whereas, John Wyman, Esq., was appointed receiver of the partnership assets, and, upon order of the court, said assets were sold at public auction by said receiver, and Will Scoville, defendant herein, became the purchaser thereof for the sum of eight thousand two hundred and twenty-five dollars; and, whereas, the said Scoville has paid the said receiver on said purchase price the sum of two thousand and fifty-six dollars and twenty-five cents, and there now remains of said purchase price unpaid the sum of six thousand one hundred and sixty-eight dollars and seventy-five cents; and, whereas, a controversy has arisen between the plaintiff and the defendant as to the amount due and to be paid over by said Will Scoville on said purchase price: Know all men by these presents, that we, Will Scoville as principal, and J. D. Seeberger and W. H. Harwood as sureties, are held and firmly bound unto John Wyman, receiver in said cause, for the payment of the remainder of said purchase price, to-wit, six thousand one hundred and sixty-eight dollars and seventy-five cents, with interest at 6 per cent. from this date, which well and truly to be made we bind ourselves, our executors, heirs, and assigns, firmly by these presents. Sealed with our seal and dated this 16th day of January, 1891. Now, therefore, this bond is upon condition that, if the said Will Scoville shall, from time to time, pay whatever amounts the court shall order and require, and

in the manner as required by said court to be paid, not exceeding the sum six thousand one hundred and sixty-eight dollars and seventy-five cents, then this obligation shall be void and of no effect. But if the said Will Scoville shall fail to make payment as ordered by said court, not exceeding in the aggregate balance due on said purchase price and interest, then this bond to have the force and effect of a stay bond, upon which execution may issue against Will Scoville and his sureties as aforesaid, for the enforcement of the payment so ordered by this court; and the principal and sureties hereby agree to make payment according as the court shall direct, and, in case they fail to make the payments as ordered, then this bond shall have the force and effect of a stay bond, and execution may issue thereon against the said principal and the sureties aforesaid. Witness our hands this 10th day of January, A. D. 1891. Will Scoville. J. D. Seeberger, W. H. Harwood."

To induce the plaintiff to sign the bond, A. H. McVey, of the firm of Cole, McVey & Cheshire, gave to him a writing, of which the following is a copy: "Des Moines, Iowa, January 10, 1891. In consideration of J. D. Seeberger, Esq., having signed the bond of Will Scoville at our request, in the case of Young, Administrator, etc., vs. Scoville, we hereby agree to save said J. D. Seeberger, Esq., harmless from all liability of every kind on said bond, and by reason of having signed the same. Cole, McVey & Cheshire."

In May, 1893, the district court rendered judgment directing Scoville to pay the receiver the amount of six thousand one hundred and seventy-eight dollars and seventy-five cents, with interest thereon from the tenth day of January, 1891, at six per cent. per annum. An appeal to this court was taken by Scoville, a supersedeas bond in the sum of one thousand dollars was filed by him, and in October, 1896, the judgment was affirmed. See *Young v. Scoville*, 99 Iowa, 177. The judgment is unpaid, Scoville is insolvent, and

demand has been made of the plaintiff for the payment of the amount due.

The plaintiff alleges that Cole, McVey & Cheshire claim that there is a legal defense to the bond signed by him, and that they are not liable on the instrument delivered to the plaintiff by McVey. The plaintiff asks that Cole, McVey & Cheshire be required to make defense, if any there be, to the bond signed by him, and, if he is found to be liable thereon, that the amount be ascertained; that the liability of Cole, McVey & Cheshire on the instrument delivered by McVey be ascertained; and that a decree be rendered against them, with the right to an execution for all sums which he shall pay or be held liable for on account of the instrument he signed. General equitable relief is also asked. The defendant Wyman, as receiver, insists by answer that there is no defense to the bond signed by the plaintiff, and in a petition of intervention, which was treated as a cross petition, demands judgment thereon against the plaintiff, and against the defendants Scoville and Harwood. The answer of Judge Cole denies all liability on his part, and avers that the plaintiff is not liable on the bond signed by him. The answer of McVey alleges that the instrument delivered by him to the plaintiff was without consideration, and denies that there is any liability on account of it. The answer of Cheshire denies liability on his part, and alleges that the instrument delivered by McVey was unauthorized on the part of the firm of Cole, McVey & Cheshire, and denies that he ever assented to or ratified it. The answer of Harwood denies liability on the bond which he signed. Other matters are set out in different pleadings, but we do not find it necessary to refer to them.

The district court adjudged the bond signed by the plaintiff to be valid and binding as against all the persons who signed it, and rendered judgment thereon in favor of the receiver, Wyman, and against Scoville, the plaintiff, and Harwood for seven hundred and twenty-four dollars and ninety-five cents, that being the amount taxed against Scoville

as costs in the case of *Young v. Scoville;* and for four thousand five hundred and twenty dollars and seventy-two cents, that being the sum adjudged to be due the administrator, less one-half the costs. The district court further adjudged that Cole and McVey were liable on the instrument delivered by the latter, and judgment was rendered against them, and in favor of Seeberger, for the amount of recovery against him. The decree also contained other provisions, which need not be noticed.

     I. It is contended that the bond signed by the plaintiff does not constitute an obligation which can be made the basis of an action against him. That claim is founded on the provision contained in the instrument to the effect that, in case its signers fail to make the payment as ordered, then the bond should have the force and effect of a stay bond, upon which execution might issue. It is said that the only consequence which resulted from the failure to make the payments required by the order of the court was that for which the portions of the bond referred to provided,— that is, liability to an execution issued to enforce the order,—and that, if that provision of the bond was invalid, the signers of the bond are released from liability. Numerous authorities are cited to illustrate the familiar rule that "sureties and grantors are never chargeable beyond the strict terms of their engagement." 1 Brandt Suretyship, section 93. That rule is not disputed in this case, and we are led to inquire as to the nature and scope of the bond which the plaintiff and Harwood signed. That it was designed to secure the payment of the sums which Scoville should be ordered and required to pay, not exceeding in the aggregate the balance specified in the bond, and interest, cannot be questioned. It "held and firmly bound" the sureties, as well as the principal, to pay those sums. The sentence, "and the principal and sureties hereby agree to make payment according as the court shall direct," leaves no doubt as to the obligations of the sureties. The provision, in terms, giving

to the instrument the effect of a stay bond, and providing for the issuing of an execution thereon, merely related to the remedy in case of default, and was not, in terms nor by necessary implication, made the exclusive remedy. Although the surety has a right to stand upon the strict terms of his contract, the scope and effect of that contract are to be ascertained and determined according to the ordinary rules which apply to the interpretation of contracts. 1 Brandt Suretyship, section 92-94. When those rules are applied to the bond in question, we do not think its intent and scope are doubtful. Whether the provisions giving to the bond the effect of a stay bond, upon which execution might issue, are valid, we do not need to determine. If not valid, they do not affect the validity of the remainder of the bond. They are clearly separable from the undertaking into which the signers of the bond entered. It was said in *U. S. v. Hodson,* 10 Wall. 395, that "it is a settled principle of law that where a bond contains conditions, some of which are legal and others are illegal, and they are severable and separable, the latter may be disregarded and the former enforced." See, also, *State v. Findley,* 10 Ohio, 51; *State v. Layton,* 4 Har. (Del.) 516; *Presbury v. Fisher,* 18 Mo. 50; Murfree Official Bonds, section 142; 4 Am. & Eng. Enc. Law (2d ed.) 676. It is claimed that the taking of an appeal in the case against Scoville had the effect to release the sureties on the bond in question. The plaintiff knew that the appeal was taken, and evidently assented to it, thinking that it might result in releasing him from liability. A further objection to the claim is that action taken by Scoville alone, not authorized or assented to by the receiver or the administrator, would not release the sureties of Scoville. We conclude that the instrument signed by the plaintiff is valid as an obligation upon his part, and that an action thereon can be maintained.

II. We next consider the instrument delivered by McVey. The evidence shows that it was signed and delivered

pursuant to an agreement made by McVey to induce the plaintiff to sign the bond, and it is not, therefore, without consideration. Since it was signed and delivered by McVey, it is clear that as to him it is valid. The firm of Cole, McVey & Cheshire was organized to transact the business of practicing law, and it is not shown, nor is there anything in the record from which it can be presumed, that the execution of such instruments as that delivered to the plaintiff was within the scope of the partnership business, or in any manner authorized by all the members of the firm. The decided preponderance of the evidence shows that Cheshire did not authorize the execution of the instrument in the firm name, and that he did not at any time ratify it. As soon as he learned of it,—and that was several years after it was given, he refused to be bound by it. He did not at once notify the plaintiff that the instrument was unauthorized, but nothing transpired thereafter which estops Cheshire to assert his nonliability. He rendered a small amount of service in connection with the Scoville litigation, but there was nothing in the nature of what he did or learned to apprise him of the existence of the obligation to the plaintiff until he learned of it as we have stated. We conclude that he is not bound by it. The evidence in regard to the liability of Judge Cole is conflicting, and perhaps no conclusion in regard to it can be reached which would be entirely free from doubt. He states that he did not know of the instrument until after the judgment against Scoville was affirmed by this court. But we are of the opinion that a preponderance of the evidence shows that in this he errs. He had control of the litigation in which the obligation was given, and it was Mr. McVey's recollection that he obtained the plaintiff as surety at the request of Judge Cole, and that the matter of securing the plaintiff against loss was fully discussed with Judge Cole, both before and after the security was given. Scoville was unable to procure sureties, and applied to Cole,

McVey & Cheshire to obtain them, and it was agreed that he would pay the firm two hundred dollars to do so. In consequence of that agreement, the sureties were procured, and that amount was charged. After the judgment against Scoville was affirmed by this court, the plaintiff had several conversations with Judge Cole, in which the liability of the former was discussed, and in which the latter stated that he did not intend that the former should have any trouble on account of that liability. In one interview, Judge Cole proposed to see Harwood, McVey, and Cheshire, and have each one assume a part of the liability, and thus settle it, the amount which Judge Cole proposed to assume being about one thousand three hundred dollars. It is true that this proposition did not alone show that he recognized any liability to the plaintiff, and that his statements to the effect that he did not intend to permit the plaintiff to suffer by reason of his suretyship may have referred to the belief that Scoville would succeed in his litigation. But when Judge Cole's relation to that litigation is considered, his responsibility for the protection of Scoville's rights, and his belief that he ought to succeed in his defense, the necessity for procuring a sufficient bond, the charge made for it, the testimony of McVey and the plaintiff, and other, although less direct, evidence, to which we have not referred, lead us to the conclusion that Judge Cole knew of and authorized, on his part, the execution of the instrument to the plaintiff, even though the fact has escaped his recollection, and that he is bound by it.

III. It is next contended that the plaintiff has no right to maintain this action before judgment is rendered against him on his obligation. By the terms of the obligation, the liability of the obligors was to be fixed by the order of the court requiring payment by Scoville. It was said in *Wilson v. Smith,* 23 Iowa, 252, that, where a bond is conditioned to save the obligee from damages, no right of action accrues thereon until the obligee, by the payment of the judgment or some part thereof, has been dam-

aged. Judgment has not been rendered against the plaintiff in this case, and he has not paid anything on the judgment rendered against Scoville, but his liability was fixed, under the terms of his obligation, by that judgment. As this is an action in equity, the power exists, not only to ascertain and determine the liability of the parties to the two obligations in controversy, but also to render such a decree as will protect and enforce the respective rights of all parties to the action, including the rendering of judgment in favor of the plaintiff. *Burroughs v. McNeil,* 22 N. C. 297; *Daniel v. Joyner,* 38 N. C. 520; *Chace v. Hinman,* 8 Wend. 452; *Conner v. Reeves,* 103 N. Y. App. 527 (9 N. E. Rep. 439). We are of the opinion that the plaintiff has shown himself entitled to the relief he asks against Cole and McVey.

IV. The receiver, Wyman, complains of the refusal of the district court to allow him the full amount of the obligation signed by the plaintiff and others, with interest thereon from its date, but fails to show that his complaint is well founded. The undertaking of the obligors was to pay whatever sums the court should require of Scoville, not exceeding the amount specified. *Kuhn v. Myers,* 37 Iowa, 351. The receiver also claims an allowance for attorney's fees, but fails to show that he is entitled to it. *Newell v. Sanford,* 13 Iowa, 463. We have examined this case with much care, but without finding reversible error in any matter of which the parties appealing complain in argument. The bond signed by the plaintiff and Harwood authorized judgment against them for the amount, including costs, taxed to Scoville, for which the decree of the district court provides. The decree appears to be right and is AFFIRMED.