## N. Y. COMMON PLEAS.

In the Matter of the Assignment of HENRY ADAMS and PETER HORNE, composing the firm of R. & H. ADAMS, to EDWARD C. HAZZARD and WILLIAM C. FENNER, for the benefit of creditors.

*Assignment — Unliquidated damages not provable against assigned estate.*

An unliquidated claim for damages is not provable against an assigned estate in the hands of assignee.

Insolvent proceedings extend only to such debts as were due at the time of the assignment. Such debts must be specific and certain sums of money to which the creditor can make oath as being justly due or to become due at some specific time; and unless the creditor, at the time of the assignment, be able to produce and verify such debt, he will not be entitled to receive from the assignees his dividend of the insolvent effects, nor will he be barred from his future action against the insolvent.

*General Term, June,* 1884.

*Before* C. P. DALY, *C. J.,* LARREMORE *and* BEACH, *JJ.*

*Hugh Porter,* for assignee.

*Chambers, Boughton & Prentis,* for Talcott, claimant.

In the Matter of the Assignment of Henry Adams, &c.

DALY, C. J. — The claim of damages for a breach of contract was not provable as a debt under the assignment. It has been settled by a long series of decisions that unascertained claims for damages were not provable as debts in proceedings in bankruptcy; that in claims for damages arising from breaches of contract in indemnity bonds and other possible liabilities, the damages must be ascertained and fixed before the act of bankruptcy to entitle the claim to be proved as a debt of the bankrupt, unless the contingent liability is one that has been specifically allowed by statute, and the actual prospective value of which at the time of the bankruptcy is capable of being ascertained by some mode of computing or estimating (*Ex parte Marshal*, 1 *Mon. & Ay.*, 118; *Ex parte Thomson*, 1 *Mon. & Bli.*, 219; *Ex parte Tyndal*, 1 *Dea. & C.*, 291; *Yellop* agt. *Evarts*, 1 *Barn. & Ad.*, 698; *Bourman* agt. *Nash*, 9 *B. & C.*, 145; *Allwood* agt. *Partridge*, 4 *Bing.*, 209; *Lancashire Coal Co., Mont.*, 27; *Wooly* agt. *Smith*, 3 *Com. Bench*, 610).

Formerly in bankruptcy proceedings in England, the claim had to be due at the time of the act of bankruptcy, and the liability upon a promissory note, not due until afterwards, was not provable. But this was relaxed by provisions in subsequent statutes which allowed contingent liabilities to be proved; where, as before stated, the value could be estimated, and under our own bankruptcy act, claims for unliquidated demands, arising out of any contract or promise, was allowed; but unless, where changes have been made in this way by statute, the rule has been as above stated. The reason of it was, as the bankrupt, under the act was to be discharged from his debts, the proceeding was to be strictly confined to what was regarded as a debt; and for the further reason that the creditors whose claims were ascertained and fixed when the bankrupt went into or was brought into bankruptcy, were entitled to share in the distribution of his estate as soon as it was gathered in, and were not to be delayed by claims against him sounding in damages, which it might take years to determ-

ine. It was said that the assets were not to be locked up, pending such uncertain litigations, but that matters were to be adjusted according to the relative liabilities of the bankrupt, as they were ascertained and known at the time of the act of bankruptcy and as his estate then existed. That it was not proper to keep the property, or a certain part of it, until it was ascertained whether somebody who had a claim to damages, which it might take years to determine, would recover any or not (*Ex parte Marshal*, 1 *Mont. & Ay.*, 118). In which connection I may mention that I have known cases in our own court in which actions for the recovery of damages, through mistakes and new trials, remained in the court for ten years before they were finally determined.

The grounds upon which unascertained claims of the nature of the one here presented were not allowed to be proved as debts in bankruptcy, apply with equal force in cases of voluntary assignments for the benefit of creditors, and indeed more so, because there the instrument itself provides how, and to the payment of what debts the property assigned shall be applied, and unless the assignment is impeachable for fraud, or otherwise invalid, the question is one to be gathered from a fair construction of the instrument, and not from the provisions of any statute (*Bishop on Assignments, chap.* 27).

The assignment is not set forth in the case as made up, but its provisions as to the manner in which the assigned estate is to be applied, is stated in the defendant's points to be, as is usual in such instruments, that the estate is to be converted into money and applied to the payment of the just debts of the assignors.

The question then is, what is to be understood as debts within the intention of the assignment.

A debt, says Sir John Cross, in *Ex parte Thomson* (*Mont. & Bli.*, 219), " is a demand for a sum certain; " and it is, says Commissioner FONTBLANGUE, in *Ex parte Marshal* (1 *Mont. & Ay.*, 118), " a sum actually ascertained." "That there must be," he says, "an ascertained debt, and not an unliquidated

demand or liability, is sustained by all the cases, legal and equitable. It must be a debt existing and ascertained at the time of bankruptcy." * * * " The distinction," he says, " between debt and damages has always been rigorously adhered to."

The same exposition of what is considered a debt is to be found in our own cases. It imports, says chief justice MONNELL in *Zirn* agt. *Ritterman* (2 *Abb.* [*N. S.*], 262, 263), a sum of money arising on contract and not a mere claim for damages; in which it was held that in our insolvent acts it does not extend to actions where the damages are unliquidated.

*In the Matter of Denny* (2 *Hill*, 220), which was a proceeding in this court under the insolvent debtor's act, which, as first enacted, allowed the trustees to sue for debts or demands, but which was afterwards limited to debts, it was held that the word demand is of much broader import than the word debt, and would embrace rights of action belonging to the debtor beyond those which could be called debts.

In *Losee* agt. *Bullard* (54 *How.*, 320), where a stockholder of a corporation was sought to be made liable under the statute for a debt, it was held that a claim for damages was not a debt within the meaning of the statute.

In *Kimpton* agt. *Bronson*, where the question of what was a debt under the United States statute making treasury notes a legal tender for debts, it was held that the voluntary payment of a specific sum of money in discharge of an obligation was, within the meaning of that statute, the discharge of a debt.

In *Kennedy* agt. *Strong* (10 *Johns.*) it was held that, under the insolvent act, goods received by the insolvent as a factor or trustee was not a debt within the meaning of the insolvent act; that the insolvent's discharge would in no way affect it, but that he remained equally liable to be sued upon it, as well after as before his discharge. And in *Mechanics and Farmers' Bank* agt. *Capron* (15 *Johns.*, 467) it was held that the insolvent's liability as indorser of a promissory note which was

In the Matter of the Assignment of Henry Adams, &c.

not due at the time of his discharge, did not constitute a debt which was or could be discharged by that proceeding, which extended only to debts that were due at the time of the assignment of the insolvent's estate, or debts contracted before that time and payable afterwards ; that it was a general and well settled rule that if the creditor, at the time of the assignment by the insolvent debtor, has not a certain debt due or owing to which he can attest by oath, so as to entitle him to a dividend of the insolvent's effects, it is not embraced in that proceeding ; and as, in that case, the liability of the insolvent at the time of the assignment was merely contingent — that is, upon the non-payment afterwards of the note by the maker — it was held that the holder of the note was in no way affected by the insolvent's discharge, but might maintain an action thereafter against him ; which was reaffirming substantially a prior decision of chancellor KENT in *Frost* agt. *Carter* (1 *Johns. Cases*, 74), in which the chancellor (then a judge of the supreme court) held that the insolvent's proceedings extended only to such debts as were due at the time of the assignment. That " such debts must be specific and certain sums of money to which the creditor can make oath as being justly due or to become due at some specific time ; and unless the creditor, at the time of the assignment, be able to produce and verify such a debt, he will not be entitled to receive from the assignees his dividend of the insolvent's effects, nor will he be barred from his future action against the insolvent." And this rule, that the liability at the time of the assignment must be ascertained and fixed at a sum certain, whether payable before or after the assignment, to entitle the creditor to a dividend of the insolvent's estate, has been recognized in many other cases both in this state and elsewhere.

Under the act (*N. Y. Laws of* 1877, *chap.* 466) regulating voluntary assignments, the creditor at the time specified in the notice must come in and prove his claim or he is debarred from participating in the distribution of the estate (*Kerr* agt. *Blodget*, 48 *N. Y.*, 62). The act (*sec.* 13) contemplates that

the creditors shall prove their claims, and it is the practice to do this by affidavit.

In this case there could be no compliance with the rule laid down by chancellor KENT in *Frost* agt. *Carter* (*supra*), for there was no debt of a certain or specific amount due at the time of the making of the assignment, or in fact any debt due then, for it was by the making of a general assignment for the benefit of creditors that Adams & Horne put it out of their power to perform the agreement made by Adams with Talcott, and it is this which Talcott relies upon as constituting a breach of the agreement. It is upon this that his claim rests, so that the claim did not come into existence until after the assignment.

The referee has found that the making of a general assignment by R. & H. Adams and their consequent inability thereafter to manufacture and supply Talcott with goods did not amount to a breach of the agreement. He has found, however, that Talcott was entitled to receive for sale under the agreement the goods which were manufactured and in the hands of R. & H. Adams at the time of the assignment, but that it did not appear that Talcott had suffered any loss or damage by these goods not being consigned to him.

The referee in his opinion states generally that there was nothing before him upon which it would have been possible for him to have estimated the amount of profits that would or might have been realized if the contract had been fulfilled.

That any estimate on the facts before him would have been purely speculative and wanting in that reasonable certainty which the law requires.

This conclusion was, I think, undoubtedly correct, so far as regards the claim for loss of profits on goods to be manufactured thereafter and delivered during the whole period for which the agreement was to run. In the affidavit of the claim, Talcott swore that the insolvent firm was justly indebted to him in the sum of $170,000, for damages arising from the breach of the contract; but, upon his examination, through various errors and mistakes, the amount sworn to in his affi-

davit as $170,000 was reduced by him to $130,000. The greater part of this claim, as thus reduced to $130,000, as appeared from his examination, was an estimate made by him upon the assumption that the sales for the following three years would be the same, or at least not less per year than they had been during the short period that the agreement was carried out. This could not be assumed in respect to the sales of this commodity, consisting of manufactured silks and cottons, for the long period of three years thereafter; and the referee properly refused to find, as requested, that it appearing that the yearly sales by the firm of the production of their mills had been $1,000,000 annually, and the annual expenses had been $23,000, the law would presume, in the absence of evidence to the contrary, that the future sales would have yielded the same returns, under the same expense, and that Talcott was entitled to have his damages for loss of prospective profits computed upon that basis.

The law makes no such presumption. Profits are recoverable as damages where it can be shown with reasonable certainty what the party would have received if the contract had been fulfilled, as appears in the leading case of *Masterson* agt. *The Mayor, &c., of Brooklyn* (7 *Hill*, 52), which the appellant cites, and on which he relies. The plaintiff there had a contract to furnish marble from a specified quarry, at a specified sum, for the erection of a city hall, which, by a contract made with the owners of the quarry, he was to receive at a smaller sum than he was to get for the marble when delivered for use in the building. That difference constituted his profit, the whole of which prospectively could be accurately ascertained by the proof of that amount, and of the amount of marble he was, by the contract, to deliver to the defendant, and it is only in such cases, where the prospective profits can be shown with reasonable certainty, that they can be recovered as damages (*Mayne on Damages*, 15 and 18).

It may have been possible to have ascertained with reasonable certainty the amount of profits that could have been

In the Matter of the Assignment of Henry Adams, &c.

obtained on the sale of the goods which R. & H. Adams had manufactured and on hand at the time of the assignment, if they had been delivered, by proof of the market price at that time, and, in accordance with the referee's finding, an action for damages for the non-delivery of these goods may have been maintainable against the members of the firm. However that may be, the goods were not delivered, and this was, after the assignment, simply a claim for an unascertained amount of damages, which was not provable under the assignment as a debt.

The appellant requested the referee to find—which the referee would not—that upon the refusal of the assignee to deliver, upon demand, the goods manufactured and on hand at the time of the assignment, he, Talcott, was entitled in this proceeding to an order or decree that they make such delivery to him or account to him, as assignee, for the proceeds of these manufactured goods.

The assignee could not be compelled to fulfill, by the delivery of goods, the unperformed contract of R. & H. Adams at the time of the assignment. No authority or power was given them, in that instrument, to do so. All the property of the firm, was, I assume, as is usual in such instances, conveyed to them subject to the trust already referred to, to convert it into money, and apply the money to the payment of the just debts of the firm, which was what they had to do and all they could do.

The conclusion from what has been stated is, that Talcott's claim does not come under this trust, because it was not a debt, but a claim for damages unascertained, which is sufficient to dispose of this appeal, without deciding whether the referee was right or wrong in holding that the making of a general assignment for the benefit of creditors was not a breach of this agreement and other questions incident to it in the case.

The judgment therefore entered upon the referee's report should be affirmed.