In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by WILLIAM T. EMMET, Superintendent of Insurance, for an Order to Take Possession of the Property and Liquidate the Business of THE EMPIRE STATE SURETY COMPANY.

FRANK HASBROUCK, as Superintendent of Insurance of the State of New York, Appellant; BUFFALO HOUSE-WRECKING AND SALVAGE COMPANY et al., Respondents.

Insurance - liquidation of business of insolvent surety company — when claims under policies of liability insurance cannot be rejected as contingent — failure of company to defend suits against assured, waiver of provision that company should be liable only for judgments paid by assured — construction and effect of statute that rights and liabilities of the corporation and its creditors be fixed as of time of order of liquidation of company — when assured entitled to recover sums paid to attorneys in defense of actions against them.

1. The principle that equality is equity, which is especially applicable to the settlement of insolvent estates, is to be given effect only by adhering to a uniform rule by which the rights of all creditors are to be determined, and where equity acquires jurisdiction to distribute the assets of an insolvent fiduciary, distribution is made proportionately to all those having claims against the fund.

2. By an order of the Supreme Court, in a proceeding instituted under and pursuant to the provisions of section 63 of the Insurance Law (Cons. Laws, ch. 28), the Empire State Surety Company was declared to be insolvent and the superintendent of insurance was directed to take possession of its property and liquidate its business. The report of the superintendent rejected as contingent certain claims under policies of liability insurance which had been filed in the liquidation proceeding by three classes of claimants, viz., *first*, claimants against whom a judgment had been rendered prior to the date of dissolution of the surety company; *second*, claimants who made settlements of claims brought against them after the date of the entry of the order of liquidation, although the causes of action against the assured arose prior to that time and the defense of such actions had been assumed by the surety company; *third*, claimants who made settlements of claims brought against them or had judgments rendered against them after the date of the entry of the order of liquidation, although the accidents upon which the assured were sued happened prior to the date of the entry of that order. *Held*, that all of these claims had so far ripened and matured as to entitle the claimants to share in the distribution of the assets in the hands of the superintendent. (*People* v. *Metropolitan Surety Co.*, 205 N. Y. 135; *People* v. *Metropolitan Surety Co.*, 211 N. Y. 107, 118, distinguished.)

3. Under these policies the surety company agreed at its own cost to defend any suit brought against the assured unless it should elect to settle the same or to pay the assured the indemnity provided for in the policy. Failure to defend suits brought against the assured constituted a breach of contract upon its part and released the assured from the agreement not to settle the claim without its consent, and was in effect a waiver of the condition of the policy that the company should only be liable after the assured had paid the judgment rendered against him. (*Brassil* v. *Maryland Casualty Co.*, 210 N. Y. 235, followed.)

4. The creditors of the insolvent company and the proportionate share of the assets to which each is entitled must be determined by some uniform standard. Section 63 of the Insurance Law contemplates that this determination shall be made as of the date of the entry of the order of liquidation unless the court at the time that the order is made shall otherwise direct by specifying some other date upon which this determination shall be made. By virtue of this provision, such date can be fixed only at the time of the entry of the order of liquidation and must apply equally to all who have claims against the insolvent estate.

5. Items paid by the assured for services rendered by attorneys after the date of liquidation in the defense of actions covered by the policy are provable against the fund in the hands of the superintendent of insurance for distribution.

*Matter of Empire State Surety Co.*, 165 App. Div. 135, affirmed.

(Argued February 24, 1915; decided April 13, 1915.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 1, 1914, which affirmed an order of Special Term denying a motion to confirm the rejection of certain claims presented on the liquidation of the Empire State Surety Company.

The following questions were certified:

I. At the date of the making and entry of the order adjudging the Empire State Surety Company to be insolvent and directing the liquidation of its business, on December 16th, 1912, had the claim of the claimants Chehalis River Lumber and Shingle Company, La Salle County Carbon Coal Company, Putnam Coal and Ice Company and Edwin H. Thatcher so far ripened and matured as to entitle the claimants to share in the distribution of the assets in the hands of the superintendent?

II. At the date of the making and entry of the order adjudging the Empire State Surety Company to be insolvent and directing the liquidation of its business, on December 16th, 1912, had the claim of the claimants Buffalo Housewrecking and Salvage Company and Charles A. Wheeler so far ripened and matured as to entitle the claimants to share in the distribution of the assets in the hands of the superintendent?

III. At the date of the making and entry of the order adjudging the Empire State Surety Company to be insolvent and directing the liquidation of its business, on December 16th, 1912, had the claim of the claimants Albert Lurie Company and the Utah Consolidated Mining Company so far ripened and matured as to entitle the

claimants to share in the distribution of the assets in the hands of the superintendent?

IV. If the said claims, or any one or more of them had not so far ripened, has the court power to set a date, other than the date of the entry of the order of liquidation, within which the claimants may perfect their claims?

V. Is the power of the court to fix a date for the valuation of claims under section 63 of the Insurance Law limited to the time of the making of the order of liquidation?

VI. Are items paid by the assured for services rendered by attorneys after the date of liquidation in the defense of actions covered by the policy provable against the fund in the hands of the superintendent of insurance for distribution in this proceeding?

The facts, so far as material, are stated in the opinion.

*P. C. Dugan, M. J. Wright* and *Frederic G. Dunham* for appellant. All claims must be valued as of December 16, 1912, and the respondents' claims had not so far ripened and matured on that date as to entitle them to share in the distribution of the assets in the hands of the superintendent. (*Matter of Mayor, etc.*, 22 App. Div. 124; *Matter of Niagara F. & W. R. Co.*, 108 N. Y. 735; *Matter of City of Buffalo*, 64 N. Y. 547.) The claim of respondent Chehalis River Lumber and Shingle Company is complicated by the fact that liability was disclaimed prior to the date of liquidation, and if the claim is otherwise provable it depends upon such complicated questions of fact that testimony would have to be taken and a reference would be necessary. The judgment was never paid by the assured and as it was rendered after the date of liquidation it is not binding on the estate here. (*People v. Knick. Life Ins. Co.*, 106 N. Y. 619; *Pendleton v. Russell*, 144 U. S. 640; *Reynolds v. Stockton*, 140 U. S. 254; *O'Brien v. Jackson*, 167 N. Y. 31;

*Austen* v. *Col. Lubr. Co.*, 87 N. Y. Supp. 497; *Buffum* v. *Hale*, 71 Minn. 192; *Ins. Co. of Pa.* v. *Telfair*, 45 App. Div. 564.) The claim of respondent Edwin H. Thatcher is based on a judgment against the assured, which was paid by him upon its affirmance subsequent to the date of liquidation. It is apparently claimed that by prosecuting the appeal and preserving the assured from levy under execution, in some way the obligation was changed. It is obvious that by performing its duty up to the date of liquidation it did not thereby change the terms of the contract. (*People* v. *Met. Surety Co.*, 205 N. Y. 135; 211 N. Y. 107; *Matter of Fleet*, 205 N. Y. 135; *People* v. *C. A. L. Ins. Co.*, 154 N. Y. 95.) These policies have received a very definite construction by the courts of this state, and it has uniformly been held that no cause of action accrues until money has actually been paid. (*Brewster* v. *Empire State Sur. Co.*, 145 App. Div. 678; *Saratoga Trap Rock Co.* v. *Standard Accident Ins. Co.*, 143 App. Div. 852; *McWilliams* v. *Home Ins. Co.*, 40 App. Div. 400; *Beyer* v. *I. A. Co.*, 150 App. Div. 857; *Burke* v. *London G. & A. Co.*, 47 Misc. Rep. 171; 126 App. Div. 933; 199 N. Y. 557; *Matter of Smith Co.* v. *Yawger*, 211 N. Y. 107; *Matter of Bauer*, 135 N. Y. Supp. 1133; *Matter of Fleet*, 205 N. Y. 135; *Dudley* v. *Goodrich*, 16 How. Pr. 189; *Hohenstein* v. *Westminster Candle Co.*, 31 App. Div. 11; *Republic of Honduras* v. *Soto*, 112 N. Y. 210; *Dunk* v. *Dunk*, 177 N. Y. 267.) The claims in the cases of Chehalis River Lumber and Shingle Company, Edwin H. Thatcher, La Salle County Carbon and Coal Company and Putnam Coal and Ice Company, in which a judgment had been rendered against the assured before December 16, 1912, but from which appeals were pending, stand on no different basis than those of the other respondents against whom no judgment had been rendered. In no one of the cases had a loss been sustained by the actual

payment of money on December 16, 1912.    (*Frost* v. *Carter*, 1 Johns. Cas. 73; *Matter of Fleet*, 205 N. Y. 135; *Williams Co.* v. *U. S. F. & G. Co.*, 11 Ga. App. 635; *Goding* v. *Rosenthal*, 180 Mass. 143; *People* v. *M. S. Co.*, 205 N. Y. 135; *People* v. *G. M. L. Ins. Co.*, 91 N. Y. 174.)   Claims in the nature of attorney's fees are presented by certain respondents.   In none of these cases had the services been rendered prior to the date of liquidation, and it would seem clear that no liability existed on December 16, 1912, for such services.  (*McKay* v. *Patton*, 174 Fed. Rep. 217; *Matter of Garlington*, 155 Fed. Rep. 999; *Matter of Keeton*, 126 Fed. Rep. 426; *Atty.-Genl.* v. *E. A. Ins. Assn.*, 175 Mass. 196; *Matter of Attorney-General* v. *North American Life Ins. Co.*, 91 N. Y. 57; *People* v. *Security Life Ins. Co.*, 71 N. Y. 222; *Matter of Attorney-General* v. *Cont. L. I. Co.*, 27 Hun, 195.)   The power of the court to fix a date for the valuation of claims under section 63 of the Insurance Law is limited to the time of making the order of liquidation. (*Matter of Emmet*, 87 Misc. Rep. 69; *Garrett Co.* v. *Morton*, 35 Misc. Rep. 10; *Richmond* v. *Irons*, 121 U. S. 27; *Comrs.* v. *Bean*, 3 Rob. [La.] 414; *Hurd* v. *N. Y. & C. S. Laundry Co.*, 167 N. Y. 89; *Cole* v. *Millerton Iron Works*, 133 N. Y. 164; *Com. Bank of Natchez* v. *Chambers*, 8 Sm. & M. [Miss.] 9; *Lathrop* v. *Steadman*, 13 Blatch. 134; *Curran* v. *State of Arkansas*, 15 How. [U. S.] 304; *Barings* v. *Dabney*, 19 Wall. 1; *Sun Mut. Ins. Co.* v. *Board of Liquidation*, 24 Fed. Rep. 4; *Moffat* v. *Smith*, 101 Fed. Rep. 771.)

*Walter H. Dodd* and *Thomas F. Smith* for Buffalo Housewrecking and Salvage Company, respondent.   The assumption by the company of the defense of the action established a liability to this claimant which still exists. (*Brassil* v. *Maryland Casualty Co.*, 147 App. Div. 815, 210 N. Y. 235; *Patterson* v. *Adan*, 138 N. W. Rep. 281.) Inasmuch as the accident which the company insured

against occurred before its insolvency, this claimant is
entitled to prove what it paid by reason of that accident.
(*Ross* v. *Company*, 56 N. J. Eq. 41; *Casualty Ins. Co.'s
Case*, 82 Md. 535.)

*Thomas B. Hardin* for Chehalis River Lumber and
Shingle Company, respondent.   The claim of the Che-
halis River Lumber and Shingle Company was not con-
tingent, because the event from which the liability of the
surety company arose had already occurred and such lia-
bility not only existed but it had become fixed and deter-
mined by the judgment of the trial court, and upon appeal
by the judgment of the court of last resort in the state of
Washington, six weeks prior to December 16, 1912, the
date of the commencement of the proceedings for liquida-
tion.   (*Carr* v. *Hamilton*, 129 U. S. 252; *People* v.
*Comcl. Alliance L. Ins. Co.*, 154 N. Y. 95.)   The mere
fact that it was stipulated in the policy in question that
the payment of a loss by the surety company might be
deferred until the insured had actually paid out money in
settlement of a suit for damages brought by persons cov-
ered by the policy, after final judgment in such suit, or
in settlement of a claim made upon the written authority
of such surety company, in no sense released the insur-
ance company from any existing liability, and such a
stipulation may be disregarded in the event that the
surety company for any reason is unable to perform its
obligations under the policy, or fails for any reason to
perform the duties imposed upon it under its contract
of insurance.   (*St. Louis Beef Co.* v. *Casualty Co.*,
201 U. S. 173; *Brassil* v. *Maryland Casualty Co.*, 210
N. Y. 235; *Glens Falls Cement Co.* v. *Travelers' Ins.
Co.*, 162 N. Y. 399; *Creem* v. *Fidelity & Casualty Co.*,
141 App. Div. 493; 206 N. Y. 733; *Travelers' Ins. Co.* v.
*Moses*, 63 N. J. Eq. 260; *Saratoga Trap Rock Co.* v.
*Standard Ac. Ins. Co.*, 143 App. Div. 853; *Appel* v.
*People's Surety Co.*, 148 App. Div. 70.)

*Benjamin Reass* and *Max Leff* for Edwin H. Thatcher et al., respondents. The claims of the claimants were not contingent on December 16, 1912, as the circumstances which · created them had previously taken place. (*People* v. *Met. Surety Co.*, 211 N. Y. 118.) The claimants were prevented by the Empire State Surety Company from paying the claims before December 16, 1912, and up to that time the surety company was defending and exercising sole control of the cases, for which reasons it should not now be permitted to urge that the claimants cannot recover here because they had not made payments before December 16, 1912. (*Brassil* v. *Maryland Casualty Co.*, 147 App. Div. 815; 210 N. Y. 235; *Rosenbloom* v. *Maryland Casualty Co.*, 153 App. Div. 23; *Creem* v. *Fidelity & Casualty Co.*, 141 App. Div. 504.) Having undertaken the defense of the action against Edwin H. Thatcher, the surety company may not now urge that the liability is not included in the policy of insurance. (*Rosenbloom* v. *Maryland Casualty Co.*, 153 App. Div. 25; *Glens Falls Cement Co.* v. *Travelers' Ins. Co.*, 11 App. Div. 411; 162 N. Y. 399; *Brassil* v. *Maryland Casualty Co.*, 147 App. Div. 815; *Royle Mining Co.* v. *Fidelity & Casualty Co.*, 126 Mo. App. 104; *Fairbanks Canning Co.* v. *London Guaranty & Accident Co.*, 154 Mo. App. 327; *Tozer* v. *Ocean Accident & Guarantee Corp.*, 94 Minn. 478; *Globe Nav. Co.* v. *Maryland Casualty Co.*, 39 Wash. 299.)

*Frank Verner Johnson* for Putnam Coal and Ice Company, respondent. The claim of the Putnam Coal and Ice Company was not contingent, as contended by the superintendent of insurance, because the event from which the liability of the Empire State Surety Company arose had already occurred, and such liability not only actually existed, but indeed had been fixed and determined by the judgments of the Supreme Court of this state prior to the date of the commencement of the pro-

ceedings for liquidation.   (*Carr* v. *Hamilton,* 129 U. S. 252; *People* v. *C. A. Life Ins. Co.,* 154 N. Y. 95.)   The mere fact that it was stipulated in the policy that the payment of a loss by the surety company might be deferred until the insured had actually paid out money in settlement of a suit for damages covered by the policy, after final judgment in such suit, or in settlement of a claim made upon the written authority of such surety company, in no sense released the insurer from any existing liability, and such a stipulation may be disregarded in the event that the surety company for any reason is unable to perform its obligations or fails for any reason to perform the duties imposed upon it under its contract of insurance. (*St. Louis Beef Co.* v. *Casualty Co.,* 201 U. S. 173; *Brassil* v. *Maryland Casualty Co.,* 210 N. Y. 235; *Glens Falls Cement Co.* v. *Travelers' Ins. Co.,* 162 N. Y. 399; *Creem* v. *Fidelity & Casualty Co.,* 141 App. Div. 493; 206 N. Y. 733; *Travelers' Ins. Co.* v. *Moses,* 63 N. J. Eq. 260; *Beacon Lamp Co.* v. *Travelers' Ins. Co.,* 61 N. J. Eq. 59; *Saratoga Trap Rock Co.* v. *Standard Acc. Ins. Co.,* 143 App. Div. 852; *Brewster* v. *Empire State Surety Co.,* 145 App. Div. 678; *White* v. *Maryland Casualty Co.,* 139 App. Div. 179; *Appel* v. *Peoples' Surety Co.,* 148 App. Div. 70.)   In any event a reasonable time should be allowed after the commencement of the proceedings by the superintendent of insurance for the liquidation of the surety company, within which a policyholder may take whatever steps are necessary to perfect his claim by " the actual payment by him of money " in settlement of the suits or judgments against him, if such payment should be held to be necessary.   (L. 1909, ch. 33, § 63, subd. 3.)

*John Burlinson Coleman* for respondent.

*Arthur W. Clement, Wilson E. Tipple* and *Adolph Hansen* for Charles A. Wheeler, respondent.

SEABURY, J.   This is an appeal by the superintendent of insurance as liquidator of the Empire State Surety

36

Company from an order denying a motion to confirm a report of the superintendent of insurance which rejected as contingent certain claims presented in the liquidation of the Empire State Surety Company. Prior to December 16th, 1912, the Empire State Surety Company was a corporation duly authorized to carry on the business of lia bility insurance in this state. On December 16th, 1912, by an order of the Supreme Court, in a proceeding instituted under and pursuant to the provisions of section 63 of the Insurance Law, the Empire State Surety Company was ascertained and declared to be insolvent and the superintendent of insurance was directed to take possession of its property and liquidate its business. The report of the superintendent of insurance rejected as contingent fourteen claims under policies of liability insurance which had been filed in the liquidation proceeding. The respondents represent eight of these fourteen rejected claims. Upon the date of the entry of the order of liquidation these respondents held policies of liability insurance issued by the Empire State Surety Company. In these policies this company agreed to indemnify the assured therein:

"Against loss resulting from the liability imposed by law upon the insured for damages on account of death or bodily injuries suffered as a result of an accident."

The policies contained the following clause:

"No action shall lie against the company upon this policy unless brought by the assured to reimburse himself for the actual payment by him of money as follows: to wit, (a) any settlement of a suit upon a claim for damages brought by any of the persons, and under the circumstances, described in section I of the insuring clause, after final judgment in such suit or in the settlement of such claim, before or after suit or final judgment, upon the written authority of the company."

The policies also contained the following clause:

"CONDITION D. If thereafter any suit is brought against the Assured to enforce a claim for damages on

account of an accident covered by this policy, the Assured shall immediately forward to the Company's Home Office every summons or other process as soon as the same shall have been served on him, and the company will, at its own cost, defend such suit in the name and on behalf of the Assured unless the company shall elect to settle the same or to pay the Assured the indemnity provided for in Condition A hereof."

There are three classes of claimants against the Empire State Surety Company referred to in the questions certified to this court. The first question refers to claimants against whom a judgment had been rendered prior to December 16th, 1912. The second question refers to claimants who made settlements of claims brought against them after the date of the entry of the order of liquidation, although the causes of action against the assured arose prior to that time and the defense of such actions had been assumed by the Empire State Surety Company. The third question refers to claimants who made settlements of claims brought against them or had judgments rendered against them after the date of the entry of the order of liquidation, although the accidents upon which the assured were sued happened prior to the date of the entry of that order.

Under these policies the Empire State Surety Company not only agreed to indemnify the assured against loss but in addition to this it agreed at its own cost to defend any suit brought against the assured unless it should elect to settle the same or to pay the assured the indemnity provided for in the policy. The policy, therefore, not only afforded insurance against loss, but also carried with it the obligation of the company to defend suits brought against the assured. This latter obligation the company, under the terms of the policy, was required to perform during the life of the contract. Failure to defend suits brought against the assured constituted a breach of contract upon its part. (*Brassil* v. *Maryland Casualty Company*, 210 N. Y. 235;

*St. Louis Dressed Beef & P. Company* v. *Maryland Casualty Company*, 201 U. S. 173.) Such a breach of contract on the part of the company released the assured from the agreement not to settle the claim without its consent, and was in effect a waiver of the condition of the policy that the company should only be liable after the assured had paid the judgment rendered against him. (*St. Louis D. Beef & P. Company* v. *Md. Casualty Company, supra.*) As was said by Judge WERNER in *Brassil* v. *Maryland Casualty Company* (*supra*): " Its failure to continue the defense of these cases was in effect a breach of its contract." In *St. Louis D. Beef & P. Company* v. *Md. Casualty Company* (*supra*) Mr. Justice HOLMES said: " The defendant by its abdication put the plaintiff in its place with all its rights. To limit its liability as if its only promise was to pay a loss paid upon a judgment is to neglect the meaning and purpose of the reference to a judgment, and even the words of the promise. The promise in form is to indemnify against loss by certain kinds of liability. The judgment contemplated in the condition is a judgment in a suit defended by the defendant in case it elects not to settle." (p. 182.) The cases which have decided that where the company has not been guilty of a breach of contract it is liable only to pay the assured the loss which has been sustained as a result of a judgment recovered against him (*Brewster* v. *Empire State Surety Company*, 145 App. Div. 678; *Saratoga Trap Rock Company* v. *Standard Accident Insurance Company*, 143 App. Div. 852; *McWilliams* v. *Home Insurance Company*, 40 App. Div. 400) are without application when the company itself has been guilty of a breach of the contract or has failed to perform its conditions. In the present case, the Empire State Surety Company by reason of its insolvency was unable to perform its obligations under the contract to defend such suits as were brought against the assured and were within the policy. This failure upon its part to perform its contract was a waiver of the condition that

it should only be liable to the assured for a loss resulting from the recovery of a judgment against him, and relieved the assured of the obligation of complying with the other terms of the policy, which, except for the failure of the company to perform its obligation, would still have been operative. When the Empire State Surety Company went into liquidation it became *civiliter mortuus*, and was no longer able to perform its obligations under its contract. Its policyholders who had incurred liability to others, or had been sued by those making claims against them, and who owing to the default of the insurer had been obliged to defend such suits, became its creditors, and as such entitled to participate *pro rata* in its assets. (*Carr* v. *Hamilton*, 129 U. S. 252, 256.) While the amount of the company's liability to these policyholders may not at that time have been liquidated, such liability had ceased to be contingent. When an accident against the consequences of which the assured is insured has happened and suit has been commenced against the assured, the insurer, under the terms of the policy, incurred the obligation of assuming the defense of such a suit. When the insurer violated the contract and refused to defend the suit or went into liquidation, thus making it impossible for it to undertake the defense of such suit, it incurred a liability which was not contingent. Where the insurer has failed to perform its contract and the accident against the consequences of which the assured is insured has happened, the liability of the insurer is certain. In such a case the liability ceased to be contingent although the amount of the liability may have been unliquidated. The insurer having failed to perform its obligation, the *amount* of the liability would not become fixed until the loss which the assured sustained was determined, but the liability of the insurer would be certain and not contingent from the moment that it failed to perform its obligation to defend the suit brought against the assured. It follows that when the order of liquidation

was entered, the claims of all of the respondents had so far ripened and matured that they constituted certain and fixed liabilities of that company. Thus none of the claims of the respondents is contingent and these claims were improperly rejected by the superintendent of insurance. This case differs from those cases which involve the liquidation of claims against an insolvent estate, where such claims are capable of being liquidated in the liquidation proceeding itself. Here the claims of the assured, while not contingent, are not capable of being liquidated in this proceeding, but can only be reduced to liquidation as a result of the termination of the suit brought against the assured. This case presents greater difficulties, also, than are involved where the claimants against the funds of an insurance company are the holders of policies of life insurance, because every person's interest in life insurance is capable of instant and present valuation (*People* v. *Commercial Alliance Life Insurance Company*, 154 N. Y. 95, 99), whereas here the amount of the claims of the claimants cannot be liquidated until the suits which have been brought against such claimants have terminated. Such delay as is necessarily incident to the liquidation of such claims is for the protection of the interests of all classes of creditors and is necessary in order that the assets of the insolvent corporation shall be put in shape for distribution. The fact that delay may ensue cannot change or alter the character of the claims or convert a certain and fixed liability into a contingent liability. (*People* v. *Commercial Alliance Life Insurance Company, supra*, 100.) This case presents a situation different from that which was presented in *People* v. *Metropolitan Surety Company* (205 N. Y. 135) and *People* v. *Metropolitan Surety Company* (211 N. Y. 107, 118). In *People* v. *Metropolitan Surety Company* (205 N. Y. 135) there was no breach of the condition of the bond when the insolvency proceedings were commenced. The case of *People*

v. *Metropolitan Surety Company* (211 N. Y. 118) involved the construction of a Federal statute. In neither of these cases was there a provision of the contract of the surety company involved, under which the surety company agreed to defend suits brought against the assured. So far as the decisions in those cases insist upon the necessity for recognizing a definite date upon which the rights and liabilities of all persons interested in the assets of the insolvent estate should be determined and fixed, they aid us in ascertaining the correct construction of section 63 of the Insurance Law. Section 63 of the Insurance Law (Cons. Laws, ch. 28, as amended) under which this proceeding was instituted provides as follows:

" The rights and liabilities of any such corporation, and of its creditors, policyholders, stockholders and members, and of all other persons interested in its assets, shall, unless otherwise directed by the court, be fixed as of the date of the entry of the order directing the liquidation of such corporation in the office of the clerk of the county wherein such corporation had its principal office for the transaction of business upon the date of the institution of proceedings under this section." (Laws of 1911, chapter 366.)

The order of liquidation that was entered December 16th, 1912, specified no other date as the date upon which the claims should be valued. The Special Term held that under the provisions of section 63 of the Insurance Law it was discretionary with the court to fix some date other than the date of the entry of the order of liquidation as the date upon which the rights and liabilities of *certain* claims under the policies should be fixed. We do not so construe the statute. The provision that " unless otherwise directed by the court " the rights and liabilities shall be fixed as of the date of the entry of the order directing liquidation, can be given effect if we regard it as conferring upon the court, to which the application for the order of liquidation is made, the discretionary power to

fix at that time some date other than the date of the
entry of the order of liquidation as the date upon which
the rights and liabilities of the persons interested shall
be fixed. The legislative intent disclosed by the use
of these words was to vest the power in the court to
which application was made to fix at the commence-
ment of the proceeding some definite date in the future
upon which the rights and liabilities of those having
claims against the insolvent corporation should be deter-
mined. It was not designed by the use of this language
that it should be discretionary with the court to classify
and reclassify the claims against the insolvent estate,
without regard to their relation to each other or to allow
the valuation of such claims to be fixed with reference to
the special facts embodied in each claim. Such an inter-
pretation would be violative of the rule that " equality is
equity " and would alter the relative rank of creditors as
between themselves. (*People* v. *Metropolitan Surety
Company*, 205 N. Y. 135.) The principle that equality
is equity is especially applicable to the settlement of
insolvent estates. Where equity acquires jurisdiction to
distribute the assets of an insolvent fiduciary, distribu-
tion is made proportionately to all those having claims
against the fund. The statute under which this proceed-
ing is instituted was designed to facilitate, not to impede
this equitable method of distribution. To construe it to
mean that it conferred power upon the court to prescribe
varying dates upon which the claims of creditors should
be determined would defeat its true purpose. The principle
that equality is equity is to be given effect only by adher-
ing to a uniform rule by which the rights of all creditors
are to be determined. The creditors of the insolvent
estate and the proportionate share of the estate to which
each is entitled must be determined by some uniform stand-
ard. Section 63 of the Insurance Law contemplates that
this determination shall be made as of the date of the entry
of the order of liquidation unless the court at the time that

the order is made shall otherwise direct by specifying some other date as the date upon which this determination shall be made.   Before the statute was amended so as to include the words "unless otherwise directed by the court" it was clear from the language of the statute as it then stood and from the decisions of the courts construing it that claims were to be fixed as of the date of the institution of the proceeding.   (*Matter of Equitable Reserve Fund Life Association,* 131 N. Y. 354; *People ex rel. Attorney-General* v. *Life & Reserve Association of Buffalo,* 150 N. Y. 94; *People* v. *Commercial Alliance Life Insurance Company,* 154 N. Y. 95, 98; *People* v. *Metropolitan Surety Company,* 205 N. Y. 135.)   As amended the statute fixes as the date for the determination the date of the institution of the proceeding which is the date of the entry of the order of liquidation "unless otherwise directed by the court."   The purpose of the amendment was not to depart from the rule of equality which always prevails in equity in the distribution of insolvent estates of fiduciaries and to permit the court to prescribe varying dates upon which the claims of different classes of creditors should be ascertained, but rather to permit the court, in the exercise of its discretion, to fix a date other than the date of the institution of the proceeding, upon which all claims against the insolvent estate should be determined.   From what has been said it is apparent that the court has power to set a date other than the date of the entry of the order of liquidation within which claimants may perfect their claims, provided that such date shall be fixed at the time of the entry of the order of liquidation and shall apply equally to all who have claims against the insolvent estate.   The last question certified requires us to determine whether the "items paid by the assured for services rendered by attorneys after the date of liquidation in the defense of actions covered by the policy (are) provable against the fund in the hands of the Superintendent of Insurance for dis-

tribution in this proceeding ?" The policies of liability insurance issued by the Empire State Surety Company provided that if suits or legal proceedings were brought against the assured the surety company should have the conduct and control of the defense of such suits and assume the cost thereof. When the surety company went into liquidation it became impossible for it to keep this obligation, and its failure to perform conferred upon the assured the right to defend the suits brought against him and for the expenses necessarily and reasonably incurred in the defense of such suits, the assured became a creditor of the surety company and as such entitled to share in the assets in the hands of the superintendent of insurance. In defending such suits the assured was performing the obligation which, under the policy, the surety company was required to perform and which it had failed to perform. The services rendered in the defense of such suits were for the benefit of the fund in the hands of the superintendent of insurance. (*Ross v. American Employers' Liability Insurance Company*, 56 N. J. Eq. 41.) The services being necessarily rendered and being rendered for the benefit of the fund it is immaterial that they were rendered after the date of liquidation and the items for such services are properly chargeable against the fund.

It follows that the order appealed from should be affirmed, with costs, and that the first, second and third questions certified are answered in the affirmative. The fourth question is answered in the affirmative provided that such date shall be fixed at the time of the entry of the order of liquidation and shall apply equally to all who have claims against the insolvent estate. The fifth and sixth questions are answered in the affirmative.

HISCOCK, CHASE, MILLER and CARDOZO, JJ., concur; WILLARD BARTLETT, Ch. J., not voting; COLLIN, J., dissenting.

Order affirmed.