GEORGE S. VAN SCHAICK, State Superintendent of Insurance, as Conservator of the Property and Assets of the UNION INDEMNITY COMPANY Within the State of New York, Plaintiff, *v.* VINCENT ASTOR, Sometimes Known as WILLIAM VINCENT ASTOR, Defendant.

City Court of New York, New York County, September 20, 1934.

*Abraham J. Halprin,* for the plaintiff.

*Carter, Ledyard & Milburn* [*Frederick H. Van Houten* of counsel], for the defendant.

SCHIMMEL, J.   Plaintiff, as Superintendent of Insurance, is the conservator of the property within this State of the Union · Indemnity Company (hereinafter referred to as the company), a Louisiana stock corporation, which was duly licensed to carry on the business of insurance in New York.   In such capacity plaintiff has brought this action to recover of the defendant premiums due on two certain policies during a period prior to the order of conservation, which was entered in the Supreme Court of this State on January 9, 1933.

Under divers policies which had been issued by the company to the defendant, other than those involved in this suit for premiums, the company had insured the defendant against liability for personal injuries sustained by defendant's employees, including such as resulted in death, and had undertaken to pay any sums which, by reason of such claims for personal injuries, might be awarded to any person under the Workmen's Compensation Law, and to defend suits or proceedings based on those claims.   Under the terms of other policies, likewise not either of those with which the complaint is concerned, the company had agreed to indemnify the defendant against loss from liability imposed by law for damages on account of personal injuries suffered by persons other than employees, and to defend any suits brought by persons claiming such injuries.   By reason of the conservation proceedings, the company was disabled on and after January 9, 1933, from performing its insurance contracts with the defendant.

In the case of one William Connett, a deceased employee of the defendant, whose death was the result of injuries sustained in the course of his employment, the Workmen's Compensation Board, prior to the conservation proceedings, had made an award which required weekly payments to the widow for the remainder of her natural life so long as she should remain unmarried.   The company ceased to meet these necessary payments after January 4, 1933, and from that time on the defendant was obliged to continue making them.   Up to the present the defendant has paid to the widow the sum of $554.   He has, moreover, since the entry of the conservation order, been required to deposit with the State Industrial Commission a certificate of the corporate stock of the city of New York in the face amount of $5,000 in order that continuance of such payments be properly secured.   The Industrial Commission ordered a

deposit of security in that amount because it found that the commutation value of the award to the widow was $4,768.68. This figure was based upon her life expectancy and the probability of her remarriage.

In the case of certain other workmen's compensation claims, the company failed, by reason of the conservation proceedings, either to defend or to pay awards, with the result that the defendant was obliged to incur legal and other expenses and also to pay awards. A like situation obtains with respect to the policies insuring defendant against liability for injuries to persons other than employees, and since the entry of the conservation order the defendant has found it necessary to continue with the defense of suits instituted by injured persons, to pay lawyers and other expenses incidental to the defense of such suits, and in some instances to disburse moneys in settlement of those actions. From the entry of the conservation order to the present time the defendant has incurred expenses in compensation proceedings and suits at law, and has paid awards and settlements which total approximately $1,216. Aside from the $5,000 certificate of New York city corporate stock which the defendant was made to deposit with the Industrial Commission as security in the widow's case, and without considering the commutation value of the award to her, the defendant has already expended, by reason of the company's default, a sum nearly equal to that of the earned premiums here sued for. These premiums amount to approximately $1,277.

Defendant seeks to set off against the sums he owes the company for premiums the moneys he had to pay out and the losses he suffered because of the company's default. Plaintiff, on the other hand, contends that these are not proper set-offs, and moves for summary judgment in his favor. By reason of its insolvency and the consequent liquidation, the company could no longer perform its obligations under the policies issued to the defendant. Such inability constituted a breach of contract for which the company became liable to the defendant. Moneys expended or losses incurred by reason of the company's breach are provable liabilities in the liquidation proceedings, which are equitable in nature, and the primary purpose of which is to effect an equitable division of the assets of the company; that is, a *pro rata* distribution among all who are entitled to share. (*Matter of Empire State Surety Co.*, 214 N. Y. 553.) The defendant may file his claims in the liquidation proceeding and thereby participate in the ratable distribution of the assets whatever they may be. He, however, prefers to set off his claims in this action against him. The right to do so depends upon a proper construction of section 420 of the Insurance Law; this section was

enacted in 1932 (Laws of 1932, chap. 191) long after the decision in *Matter of Empire State Surety Co.* (*supra*), which related only to the provability of certain claims in the liquidation proceeding itself.

Section 420 allows " mutual debts or mutual credits between the insurer and another person " to be set off in a civil action at law. The word " debt " must naturally be construed according to accepted meaning. A debt denotes a fixed and definite liability due or to grow due; it must be an existing liability and not one created by law. In *People* v. *Metropolitan Surety Co.* (205 N. Y. 135) reference is made to a number of cases which point out the distinction between a debt and a claim or liability. A study of these cases is instructive. In *Matter of Adams* (15 Abb. N. C. 61) there is a discussion of English authorities wherein the distinction is drawn between " debt and damages." Following such discussion, DALY, Ch. J., says further (at p. 65): " The same exposition of what is considered a debt, is to be found in our cases. ' It imports,' says Chief Justice MONELL, in *Zinn* v. *Ritterman*, 2 Abb. Prac. (N. S.) 262, 263, ' a sum of money arising on contract, and not a mere claim for damages.' * * * In *Losee* v. *Bullard*, 54 How. Prac. 320, where a stockholder of a corporation was sought to be made liable under the statute for a debt, it was held that a claim for damages was not a debt within the meaning of the statute." A similar distinction is drawn in *Matter of Hevenor* (70 Hun, 56; affd., 144 N. Y. 271). But no useful purpose would be served by multiplying authorities, which could be garnered from the reports in this and most other jurisdictions.

It is important that an obligation imposed by law to pay damages for breach of a contract be always differentiated from a contractual obligation to pay a sum of money. The latter is a debt, but the former is no more a debt than is a liability, similarly imposed by law, but not yet reduced to judgment, to pay damages for an assault or any other tortious act.

The claims upon which defendant predicates his set-offs in the case at bar were not debts due at any time from the company, and have not even now ripened into obligations which may be accurately classified as debts. They are only liabilities for damages for breach of contract. (*Matter of Empire State Surety Co.*, *supra*.) Moreover, they were never due from the company, the liabilities themselves arising as a consequence of the liquidation proceedings which, from a practical standpoint, put an end to the company's existence and gave the defendant a claim against its assets, now a fund for the benefit of all creditors. To allow offsets such as are here pleaded would give defendant, who had delayed in the payment of premiums, a favored position over other policyholders who had

been prompt. The equitable purposes of such liquidation proceedings would in large measure be thwarted if delinquent policyholders were allowed to wipe out their fixed obligations to the company by offsetting mere claims for damages growing out of the company's inability to perform its contracts occasioned by the act of the State in seizing its assets for ratable division. Such could not have been the intent of the Legislature in enacting the section in question. (See *Van Schaick* v. *Lincoln Dye Works, Inc.*, 146 Misc. 342.)

If the Legislature had intended that all claims provable in liquidation might be offset in an action at law, it would have been a simple matter to say so. But the Legislature instead provided that " mutual debts or mutual credits " might be set off against each other with the qualification *inter alia* that no set-off shall be allowed against the liquidator where " the obligation of the insurer to such person would not then entitle him to share as a claimant in the assets of such insurer." Therefore, under the express wording of the statute, the right to share in the assets as a claimant is but one of the prerequisites to the right to assert a set-off against the liquidator.

The foregoing discussion applies to foreign companies, a portion of whose assets are in liquidation in this State, as well as to domestic insurers. The Superintendent of Insurance in his capacity as conservator of a foreign insurer is vested with the rights and burdened with the duties of an ancillary receiver of a foreign corporation in this State. (Insurance Law, § 406, as added by Laws of 1932, chap. 191, § 1.)

The court is of the opinion that the defendant merely has provable claims against the estate in liquidation, that there are no debts due even today from the estate to the defendant, and, furthermore, that section 420 of the Insurance Law requires that a debt to be offset must be one which was actually due from the insurer at the time of the liquidation and not one which arose in direct consequence thereof. (*Brainerd* v. *Dunning*, 30 N. Y. 211; *Matter of Adams, supra; Matter of Hevenor, supra; People* v. *Metropolitan Surety Co., supra.*)

However, in the case of the widow Connett, the defendant was obliged to make the weekly payment to her during the period from January 4, 1933, to January 9, 1933, the date of the liquidation; that was a fixed and definite liability which the company failed to discharge prior to the liquidation, and the payment covering this time which the defendant was compelled to make may be properly set off by him.

Plaintiff's motion for summary judgment is granted to the extent that judgment may be entered in favor of plaintiff and against

the defendant for the relief demanded in the complaint, less the moneys paid by defendant to the widow Connett for the period from January 4, 1933, to January 9, 1933. Action is severed accordingly. Execution is stayed for five days after service upon defendant's attorneys of notice of entry of judgment. Settle order.