EBERLEIN, Respondent, vs. FIDELITY & DEPOSIT COMPANY OF MARYLAND, Appellant.

*September 12—November 14, 1916.*

*Bankruptcy: Claims: Trustee's title to property: Indemnity insur- ance: Employer's liability: Privity between insurer and em- ployee: Condition precedent to liability: Payment of· loss by as- sured.*

1. An unliquidated tort claim against an employer for injuries to an employee, not reduced to judgment until after the employer had been adjudged a bankrupt, was not a debt provable in the bank- ruptcy proceedings, and the trustee in bankruptcy took no title to an indemnity policy insuring the employer against loss from the liability imposed by law on account of such injuries.
2. A policy by which the insurer agrees to indemnify an employer against loss from the liability imposed by law on account of in- juries to his employees, and providing that no action shall be brought under it unless brought by the assured for a loss actu- ally sustained by his payment in money of a final judgment ren- dered in a suit against him, is a contract to indemnify the as- sured alone, and there is no privity of contract between the insurer and an injured employee.
3. Payment of the loss by the assured is a condition precedent to his right to maintain an action on such a policy.    [Whether under the provision above stated a payment otherwise than in money would satisfy the condition, is not decided.]

4. After a judgment had been rendered against the assured in favor
   of an injured employee, the assured, being then bankrupt and
   without funds, obtained from a bank money to the amount of
   such judgment, the bank taking the note of the assured, in-
   dorsed by the attorney for the employee. The money was
   handed to said attorney, who gave the assured a satisfaction of
   the judgment but retained the money as security for his in-
   dorsement, it being agreed that the employee was not to receive
   any of it unless the attorney should be successful in collecting
   the insurance, the claim for which, under the policy, was as-
   signed to him. *Held*, that such transaction did not constitute
   a payment of the loss by the assured such as would give a right
   of action on the policy.

APPEAL from a judgment of the circuit court for Forest
county: W. B. QUINLAN, Circuit Judge. *Reversed*.

This is an action to recover upon a policy of insurance is-
sued March 15, 1912, by the defendant to the Wisconsin
Fruit Package Company to indemnify it from loss resulting
from injuries to its employees. By the terms of the policy
the defendant agreed to indemnify "the assured against loss
from the liability imposed by law . . . on account of bodily
injuries or death" suffered by employees as the result of the
negligence of the assured, and contained a clause providing
that no action should be brought under it unless after a final
judgment rendered in a suit by the employee and within two
years from the date of the judgment "for a loss that the as-
sured has actually sustained by the assured's *payment in
money*" of a final judgment rendered after trial in an action
against the assured for damages on account of the negligence
of the assured.

The action was tried by the court and the facts were not
in dispute.

An employee of the assured named Castonguay received an
injury while at work and brought action therefor against the
assured, of which action the defendant took entire charge.
After said action was commenced and on November 22, 1913,
an involuntary petition in bankruptcy was filed against the

assured, an adjudication of bankruptcy followed on December 8, 1913, and a trustee was appointed and qualified. The assets were scheduled at $26,025.67 and the liabilities at $65,558.22, of which $20,918.04 were either secured or priority claims.

A verdict of $1,500 was rendered against the assured in the Castonguay action September 18, 1913, upon which judgment was not rendered until January 31, 1914. In March, 1914, all the property of the bankrupt was sold by the trustee to one Fish. The business of the bankrupt ceased upon its bankruptcy. In November, 1914, a meeting of the stockholders of the bankrupt corporation was held and a board of directors elected, which board held a meeting in December, 1914, and passed a resolution reciting the rendition of the Castonguay judgment and authorizing the treasurer of the corporation to take steps to secure funds to pay the judgment and to assign as security for the loan any property or rights which the corporation might have. The regularity and validity of this meeting is attacked by the appellant, but in the view taken by the court of the case it is not necessary to consider the question. In April, 1915, the treasurer of the corporation, Mr. E. A. Schmidt, went with the plaintiff (who was the plaintiff's attorney in the Castonguay action) to the German American National Bank of Shawano. Schmidt gave to the bank the note of the company, indorsed by himself and *Mr. Eberlein,* for the amount of the Castonguay judgment, the cashier handed the money to Mr. Schmidt, who handed it to *Mr. Eberlein,* who at once delivered a satisfaction of the Castonguay judgment to Schmidt and deposited the whole sum in the same bank to his own credit by virtue of an agreement with Castonguay that he (*Eberlein*) was to retain the money to secure his indorsement of the note and that Castonguay was not to receive any of it unless *Eberlein* was successful in the present action.

It was understood at the time that the bankrupt had no funds; that *Eberlein* was the responsible man to whom the

bank would have to look for its pay; and that suit was to be brought against the defendant on the policy and when the amount was collected in that suit it was to be used to pay the note. On the same day the corporation assigned to *Eberlein* any claim it might have under this policy, and *Eberlein* thereafter brought this action.

The circuit court concluded that there was no fraud in the transaction and rendered judgment against the defendant for the amount of the Castonguay judgment and interest. The defendant appeals from that judgment.

For the appellant there was a brief by *Williams & Stern,* and oral argument by *Burdette F. Williams.*

For the respondent there was a brief by *Eberlein & Larson,* and oral argument by *Albert S. Larson.*

The following opinion was filed October 3, 1916:

WINSLOW, C. J.    The claim of Castonguay was purely a tort claim, unliquidated, not reduced to judgment until after the adjudication in bankruptcy, and hence not a debt provable in the bankruptcy proceedings. *In re Crescent L. Co.* 154 Fed. 724; *Dunbar v. Dunbar,* 190 U. S. 340, 350, 23 Sup. Ct. 757.    It follows, necessarily, that the title to the insurance policy did not pass to the trustee in bankruptcy, but remained with the bankrupt to indemnify it against loss. The bankrupt proceedings may therefore be dismissed from consideration.

It is settled in this state, in accord with the weight of authority elsewhere, that a policy of insurance like the one before us is a contract to indemnify the assured alone; that there is no privity of contract between the insurer and the injured employee; and that payment of the loss by the assured is a condition precedent to the right to maintain an action on the policy by the assured. *Stenbom v. Brown-Corliss E. Co.* 137 Wis. 564, 119 N. W. 308, and cases cited in the opinion in that case.

In the *Stenbom Case* it was also held that, under a policy

which contracted to reimburse the assured for a loss "actually sustained and paid" by him, the payment may be made otherwise than in money, provided the same is made and accepted in good faith and there is a *bona fide* settlement and satisfaction of the judgment secured by the injured employee.    In the present case the condition of the policy provides that there must be "payment in money" by the assured before there arises liability upon the policy.    It may well be that this provision would logically take the case out of the last-named rule. We do not find it necessary, however, to decide that question.

Assuming that the words used in the present policy are no stronger in legal effect than those used in the *Stenbom* policy, we are well convinced that there was no payment shown here. True, the corporation gave an absolute note to the bank which *Eberlein* indorsed, and the money was secured on that note. Had *Mr. Eberlein* turned that money over to Castonguay and been content to look to the defendant's contract for his protection, a very different question would have been presented.

But the money has never been used to pay the judgment, and never will be unless there is a recovery in this action first. This exactly reverses the terms of the defendant's contract. That contract is to pay the assured what the assured has first been compelled to pay to the injured person.    The arrangement now to be substituted provides for paying the injured person what the insurance company has first been compelled to pay to the assured.    To say that the assured has actually paid a judgment when the money has merely been secured from the bank on a note and never has reached the judgment creditor, but is held by an indorser of the note as security for his indorsement and is to be turned over to the bank at once in case of failure in the present action, is to make substance out of shadow.

The case principally relied on by the respondent is the case of *Herbo-Phosa Co. v. Philadelphia C. Co.* 34 R. I. 567, 84 Atl. 1093.    While there are some similarities in the two cases

there are also very substantial differences, and we cannot consider it as controlling or even as very persuasive as applied to the facts before us.

*By the Court.*—Judgment reversed, and action remanded with directions to render judgment for the defendant dismissing the complaint.

The respondent moved for a rehearing and for a modification of the mandate.

In support of the motion there was a brief by *J. A. Walsh & Eberlein & Larson,* attorneys, and in opposition thereto a brief by *Williams & Stern,* attorneys for the appellant.

The motion was denied, with $25 costs, on November 14, 1916.