**GENERAL ACC. FIRE & LIFE ASSUR. CORPORATION, Limited, v. BUTLER'S ICE CREAM FACTORY, Inc., et al. (No. 1071–4815.)**

Commission of Appeals of Texas, Section A. May 9, 1928.

1. **Insurance 539(3)—In liability policy providing insured shall give immediate notice of accident, term "immediate notice" means within reasonable time.**

In liability policy providing that insured shall give immediate notice of any accident, term "immediate notice" means within reasonable time, which is usually question of fact.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Immediate Notice.]

2. **Insurance 665(7)—Failure to promptly deny liability under policy requiring immediate notice of accident, where notice was presented 53 days after accident, held some proof notice was not unreasonably delayed.**

In action on liability policy providing that assured should give immediate written notice of accident, where insured did not give notice until 53 days after accident and insurer failed to promptly deny liability but accepted the report with reservations, *held*, that failure to promptly deny liability constituted some proof that giving of notice was not unreasonably delayed.

3. **Insurance 668(14)—Whether notice 53 days after accident was unreasonably delayed held for jury in suit on liability policy.**

In action on liability policy requiring insured to give immediate notice of accident, where insured did not give notice until 53 days after accident but insurer's agent had prior actual notice of accident, whether giving of notice was unreasonably delayed *held* for jury.

4. **Insurance 347—Insured's transfer of liability policy to secure judgment against him because of accident did not bar recovery on policy.**

In action on liability policy where insured had paid judgment, transfer of policy to judgment holders as security for payment of judgment *held* not to bar insured's recovery on policy, where all parties at interest were before the court.

5. **Contracts 313(1)—Party to executory contract has right to have integrity of contract preserved.**

Among rights of party to executory contract is right to have integrity of contract and relation preserved.

6. **Insurance 666—Rendering judgment against liability insurer in excess of amount actually paid by insured under judgment, which amount policy made limit of recovery, held not error where insurer wrongfully denied liability.**

In action on liability policy where insurer wrongfully denied liability, judgment against insurer for sum insured paid and additional sums when insured shall have paid them *held*

not erroneous, though policy provided that insured should have no cause of action except for loss actually sustained and paid by him in money in satisfaction of judgment after trial of an issue since entire cause of action was merged in judgment, so that future suit would be based upon judgment.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by Butler's Ice Cream Factory, Inc., against the General Accident Fire & Life Assurance Corporation, Limited, in which the United States Fidelity & Guaranty Company and Mrs. Ruth Hays, individually and as guardian, intervened. To review a judgment of the Court of Civil Appeals (291 S. W. 674), affirming a judgment for the plaintiff and the interveners, the defendant brings error. Affirmed.

Lea, McGrady, Thomason & Edwards, of El Paso, for plaintiff in error.

A. W. Norcop, C. W. Croom, and R. A. D. Morton, all of El Paso, for defendants in error.

NICKELS, J. We refer to the opinion of the Court of Civil Appeals (291 S. W. 674) for a general statement of the case.

1. The policy included this stipulation:

"The assured shall give immediate written notice of any accident, irrespective of whether any personal injury * * * is apparent at the time," etc.

It is claimed that "written notice" was first given 53 days subsequent to the accident.

[1] Presence of the stipulation and absence of "written notice 'given immediately'" formed a predicate for the insurer's request for a favorable verdict peremptorily instructed. Denial of that request is assigned for error.

While doubting such nature in the stipulation (Spoke Co. v. Md. Cas. Co., 102 Ark. 1, 143 S. W. 85, 38 L. R. A. [N. S.] 62, Ann. Cas. 1914A, 268), we assume its observance (absent waiver) to be a condition precedent to liability. We merely assume, too, its validity when given that character.

Literalism of the terms employed, if mere words control, import obligation to do the impossible, for "immediate" (in that way) means "instant," and, perforce, "without any delay whatever." Manifestly, the parties did not contract for that extreme. They did not define the term "immediate," but the law supplies what was omitted by the general phrase "within a reasonable time." Dallas Opera House Ass'n v. Dallas Enterprises, Inc. (Tex. Com. App.) 298 S. W. 397; Fidelity, etc., Co. v. Courtney, 186 U. S. 342, 22 S. Ct. 833, 46 L. Ed. 1193, 14 R. C. L. 1329. What is a "reasonable time" may be a question of law; usually it is a fact issue. Ibid.

The collision which started the controversy

happened November 22, 1924. One car (driven by Alvarez) belonged to Butler's Ice Cream Factory, Inc.—the doings of its driver being covered by the policy in question; the other belonged to Gnauck. Hays, the victim, was employed by a third person and was covered by insurance taken out by his employer and written by the United States Fidelity & Guaranty Company, represented by Saunders. In November and December, 1924, and January, 1925, Conley was "adjuster" at El Paso for plaintiff in error.

Saunders heard of the accident "about" November 23, 1924. "Some short time after that" (i. e., "some time during December, before the 23d," 1924) Saunders informed Conley of the accident. Saunders provoked the interview because his company was supposed to have rights in subrogation. On the next day, Conley communicated with Butler's Ice Cream Factory, Inc., and with the aid of an employee of that company began to prepare a "written" and somewhat detailed report of the accident to be sent in to headquarters of his company. In this joint effort, it developed that the insurer (or Conley for it) desired a statement from and signed by Alvarez (driver of the Butler's Ice Cream Factory, Inc., car), and that he (having resigned on the night of the day of the accident) was not then available. Inferably, that report was to be and was being made on forms of the insurer furnished for the purpose, and it would have been completed and made that day except for the desire and request for Alvarez's statement. In this immediate connection, it will be noted, the policy stipulation merely calls for "written notice of any accident," and does not call for detailed information about an accident. Thereafter, search was made for Alvarez; he was located and his statement procured January 15, 1925. An employee of Butler's Ice Cream Factory, Inc., found him and took him to Conley's office and Conley reduced the statement to writing, procured its signature and on that day forwarded the report by mail to the company's representatives at Houston. After the preliminary effort at making the report, Conley said:

"They waited [something more than two weeks] until he [Conley] could get hold of Alvarez, then they finished it January 15, 1925."

Conley pursued independent investigations throughout a period intervening dates, respectively, (before) the first effort at making the written report and subsequent to January 15, 1925.

The "written" report thus made was received at the Houston office January 19, 1925. January 20, 1925, a letter from that office was mailed to Butler's Ice Cream Factory, Inc., in which it was said:

"Your writen report of this accident, which occurred on November 22, 1924, was received by us on January 19, 1925.

5 S.W.(2d)—62

"We hasten to advise you that this notice is accepted for investigation only under a full reservation of all parties' rights due to delayed notice, as notice is required by the policy contract of the above number. Said contract requires immediate written notice of any and all accidents, regardless of whether injury to person or damage to property is apparent at the time of the accident. Considerable delay was occasioned in this instance thereby preventing the company's representatives from making immediate investigation, which we feel has prejudiced the company's rights.

"We are referring this report to the company's attorneys, Messrs. Lea, McGrady, Thomason & Edwards, First Nat. Bank building, in your city, for such investigation as is necessary, and we trust you will co-operate with them toward completing same as soon as possible.

"The purpose of this notice is to fully reserve the rights accruing to all parties under the policy contract, above number, while the accident can be fully investigated without delay, and you will be advised concerning the final attitude of the company toward their liability under the contract on completion of this investigation. This procedure has been forced on us by your action, and we trust you will understand our position, which is to try to protect you as contracted, and still protect the company."

February 4, 1925, a representative or member of the firm of lawyers mentioned in the letter came to the "president and general manager" of Butler's Ice Cream Factory, Inc., and said that he was "representing the insurance company" and "wanted to know the facts of the case." Thereupon the two got in the president's car and went to the scene of the accident, where the president "showed him how it happened and all about it"; thence they "went and talked with some people that saw the accident." The president said that he gave "all the assistance he could." Nothing appears in the record to suggest lack of co-operation or disclosure by the "president." February 5, 1925, Butler's Ice Cream Factory, Inc., through its president and general manager, received a letter from that representative of the lawyers and the "insurance company." Exact contents of the letter are not shown, but in a permissible view of the evidence with it was inclosed the original or a copy of a letter in these words:

"February 2, 1925.

"Re G. A. Auto A–660884. Butler Ice Cream Factory, Inc., Geo. Hays, injured; accident, Nov. 22, 1924.

"Mr. J. R. Butler, and/or Butler Ice Cream Factory, Inc., 2222 Texas Avenue, El Paso, Texas.—Gentlemen: Referring to letter of date January 20, 1925, from Cravens, Dargan & Co. to you in reference to the above matter, this is to now advise you that the General Accident, Fire & Life Assurance Corporation, Limited, cannot accept any responsibility under its policy for the above accident on account of your failure to give the company immediate no-

tice of the accident, as required by the terms of the policy. * * *

"The company feels that its rights have been prejudiced by reason of this delay, and therefore will neither make defense of this suit nor assume any liability therefor under the terms of this policy. Yours very truly, General Accident, Fire & Life Assurance Corporation, Limited, by Andy C. Wood, Attorney."

The policy stipulations include one requiring the insured, "whenever requested," to "aid" the insurer in "securing information and evidence," etc.

The requirement of "immediate written notice of any accident" obviously was made primarily for the benefit of the insurer, and plainly the insurer had, at the time the report of January 15, 1925, was made, a superior position from which to judge of the reasonableness or not of the period intervening the accident and making of the report—this is emphasized by the fact of previous knowledge of the accident and investigations made. If reasonable minds could not operate a dispute on the matter of reasonableness and if giving of "immediate written notice" was a condition precedent to liability, the insurer knew that situation when it received the report of January 15, 1925. In that view, it was the right, if not the duty, of the insurer to assert nonliability in unmistakable terms. That, however, was not done. The course adopted and pursued is marked with equivocation.

While (in the letter of January 20, 1925) the report was "accepted" with reservations, it was not rejected. That it was "accepted" for some purposes is manifested in the declaration that the "final attitude" of the insurer touching the existence or not of liability (as determinable by the giving or failure to give the required notice) would be subsequently stated. And while "final attitude" abiding result of "investigation" was indicated, the suggestion of "co-operation" by the insured in the investigation may have been a "request" therefor per terms of a stipulation noted above; so taken, the "request" presupposed then present existence of the policy obligations.

Statement of the insurer's "final attitude" being thus presently withheld, a statement thereof was prepared as early as February 2, 1925 (see letter of that date above); nevertheless the insurer, on February 4, 1925, caused further investigation to be made and secured the "co-operation" suggested in the letter of January 20th (and, maybe, required in the policy) and withheld until February 5th delivery of the letter of February 2d, stating the first unequivocal denial of liability account of breach of the stipulation for "immediate written notice."

[2] Because of the nature of the stipulation and the position of the insurer to judge the situation then presented, we hold that its failure promptly to deny liability and its conduct thereafter make up some proof that giving of "written notice" (considered as given first on January 15, 1925) was not unreasonably delayed. Manifestly, the insurer doubted existence of an unreasonable delay; and since it doubted, a jury may not be precluded from entertaining a like doubt. Lest some things said in the preceding paragraphs be misconstrued, we take occasion to say that we do not hold, nor do we imply, an opinion that waiver followed the conduct mentioned: that may or may not be true, and whether it is true is a question whose determination we do not find necessary.

To that proof must be added some already intimated. Notice has been taken that the stipulation relied upon purports no more than simple "written notice of any accident." It does not require a detailed report or such a one as was insisted upon by Conley. The insured was in the act of giving "written notice" as early as some undisclosed day in December, prior to the 23d day of that month. Its forwarding was delayed until January 15, 1925, at Conley's instance. The delay thus caused must be charged, we think, to the insurer rather than to the insured in determining the matter of a reasonable time. In that way the 53 days insisted upon as the period of delay are cut down to a maximum of 30 days with some evidentiary margin for a further reduction.

The "president and general manager" of the insured corporation made prompt efforts to inform the insurer's agents of the accident. On the day thereof, he caused a subordinate to call their office by telephone for that purpose; the call was placed, but no connection was made. Thereupon the president instructed the subordinate "to keep after" the agents "until he had * * * reported the accident." He believed a report had been made until he discovered its lack during an interview with Conley, which provoked the joint efforts of an employee of his company and of Conley to make the report (already described) some time prior to December 23d. The president testified that, according to his "best recollection," that occurred "from the 15th to the 20th of December, 1924."

Before Conley et al. began to compile the report, he had secured the "police report" of the collision which gave a "diagram" of the scene, names of the two drivers (Alvarez and Gnauck), and the name of Hays (the victim); what else, if anything, was disclosed in "the police report" is not shown. Later, he interviewed Gnauck, as, also, Alvarez (as shown). Hays lived until January 5, 1925, but Conley did not interview him. He learned that "an eyewitness" was employed at a given place in the neighborhood of the scene of accident; whether that witness was interviewed is not shown. The president of the insured corporation and a representative of the insurer (as noted above) on February 4, 1925, "talked

with some people who saw the accident"; who those "people" are (and how many) are facts not shown. No issue was made about the insured's liability for Hays' injury and death, or about the insured's good faith and diligence of defense against claims thereon.

Whether, in fact, the insurer was deprived of evidence appropriate to a defense against Hays' heirs is not shown except to the extent of a mere possibility.

The jury, on a "special issue," found that delay in notification did not prevent the insurer "from making any defense or preserving any substantial right."

[3] The situation thus projected lacks warrant for a ruling that unreasonable delay appears as a matter of law, and in consequence the first assignment must be overruled.

2. The liability of the insured for Hays' injuries and death was adjudged (November 10, 1925) in a suit between Hays' heirs and United States Fidelity & Guaranty Company (subrogative assignee) as plaintiffs and the insured as defendant. That judgment became final. Therein Hays' heirs were allowed recovery of $2,500, with interest at 6 per centum from that date, and the United States Fidelity & Guaranty Company had a like recovery. On the judgment claims the insured paid Hays' heirs $500 and paid the United States Fidelity & Guaranty Company $500. Court costs and attorney's fees paid by the insured amounted to $522.50. Thereupon an agreement was made between the parties under the terms of which execution was stayed to abide named contingencies, and the insurance policy here in question and rights thereunder were assigned to the judgment plaintiffs "as security * * * for the payment of the judgment." The present suit was brought on the policy by the assured. The "assignees" intervened and set up their rights upon showing that the judgment of November 10, 1925, had not been satisfied.

The character of judgment which followed is disclosed in the opinion of the Court of Civil Appeals. See 291 S. W. 676, first column.

[4] By its fourth assignment, the insurer presents error in allowing recovery to the insured in view of the transfer. But as the transfer was for "security" and all parties at interest were before the court (of blended law and equity jurisdiction) the contention lacks merit.

Recovery presently enforceable was allowed the assignees in the sum of $1,522.50 (the aggregate of the payments made on the former judgment by the insured). The other decretals affecting plaintiff in error merely establish the right of the insured to receive from the insurer $1.522.50 and $2,477, with interest at the legal rate, if, as, and when the insured shall have paid those sums (inclusive of interest at the legal rate from November 10, 1925, date of the former judgment) to plaintiffs in the former judgment.

[5, 6] It is to be remembered that amongst the rights of the party to an executory contract is the right to have integrity of the contract and relation preserved. 6 R. C. L. 1024. And since as held, the insurer wrongfully denied liability, February 5, 1925, those rights of the insured were invaded. Suit upon the policy thereafter of necessity involved vindication of the infringed rights. That inhered in the cause of action. The decretals as against the insurer do no more, in our opinion, than merge the entire cause of action into judgment. There is, therefore, practical observance of the so-called "no action clause" of the policy (set out on page 679 of 291 S. W.). This is so because, in so far as presently enforceable recovery is allowed, it is for "money" paid by the insured "in satisfaction of a judgment after trial of the issue," and when the insured shall have so paid the balance it will have cause of action therefor resting in the present judgment. Because of merger, future suit will be upon the judgment instead of upon the contract (15 R. C. L. 792), and of this the insurer may not justly complain. New York Life Insurance Co. v. English, 96 Tex. 268, 72 S. W. 58, cited by plaintiff in error, is inapropos, for that suit was upon a monthly installment policy, and each of the two judgments reversed required payment (with provision for a series of monthly executions) in direct opposition to terms of agreement there sought to be enforced. Like observation is made of Christen v. Rhulman, 24 La. Ann. 50, 33 La. Annot. Ed. 35. It appears that no part of the debt involved in Mondiolf v. American Building Co., 83 Wash. 584, 145 P. 577, had matured when judgment was rendered; yet by the judgment the debt was established in advance of happening of the contingency whose occurrence per the contract might never come about; here, the contingency must occur before the judgment (by new suit upon it) may be enforced as to future payments by the insurer.

In this branch of the case, we have merely assumed the "no action clause" remained in effect despite the insurer's failure to defend the former suit against the insured (see American Indemnity Co. v. Fellbaum, 114 Tex. 127. 263 S. W. 908, 37 A. L. R. 633; St. Louis Dressed Beef & Provision Co. v. Maryland Gas. Co., 201 U. S. 173, 26 S. Ct. 400, 50 L. Ed. 712); we do not mean to imply an opinion to that effect.

The assignments presenting error in rendering judgment for more than loss actually paid by the insured and in rendering judgment enforceable in futuro are without merit.

3. We recommend affirmance of the judgment of the Court of Civil Appeals.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.