E. W. ZIEMAN, Appellee, v. UNITED STATES FIDELITY & GUARANTY COMPANY OF BALTIMORE, MARYLAND, Appellant.

No. 40698.

September 29, 1931.

Rehearing Denied April 8, 1932.

Cornwall & Cornwall and H. E. Narey, for appellee.

Brackney, Farr & Stockman and Buck & Kirkpatrick, for appellant.

Grimm, J.—The sufficiency of the petition to state a cause of action was challenged by a demurrer. The demurrer was overruled, and the defendant electing to stand on its demurrer and refusing to plead further, judgment was entered against it, as prayed. The petition, supplemented by a stipulation of the parties, discloses substantially the following facts: .

The defendant, the United States Fidelity & Guaranty Company of Baltimore, Maryland, is, and at all times herein material was, a corporation organized and operating under the laws of

the state of Maryland, engaged in the business of writing general liability insurance. It was licensed to do business in the State of Iowa at and before the time of the accident in controversy.

On or about January 14, 1927, the Clay County Fair Association of Spencer, Iowa, entered into a contract, in writing, with the World Amusement Service Association of South Dakota, hereinafter called the "Amusement Company," by the terms of which the Amusement Company agreed to promote and conduct automobile races as a part of the program and entertainment of the Clay County Fair for the year stated. The Amusement Company agreed to furnish seven racing cars and professional drivers for automobile races for six events on the Fair program. The plaintiff (appellee) attended the County Fair. The contract was carried out between the parties and the agreed automobile races took place. The plaintiff (appellee) was a guest or patron of the Fair Association and received injury during one of the races which he alleges was caused by the negligence of the Fair Association and the Amusement Company.

A portion of the contract concerning said professional races is as follows:

"The first party (the Fair Association) agrees to promote and conduct Automobile Races as a part of the 1927 Clay County Fair at Spencer, Iowa, on, to wit: Saturday, October 1st, which automobile races shall be advertised as a special feature. The second party (the Amusement Company) agrees to have present for said Automobile Races seven (7) racing cars and professional drivers and to furnish a program of six (6) events."

Prior to the convening of the County Fair and on or about July 1, 1927, in contemplation of possible damages to result from the races, the Amusement Company obtained a policy from the appellant to indemnify and protect said Company from the consequences of any damages that might result from the automobile races.

Attached to the policy and as a part thereof is an exhibit designated "Schedule of Statements." The liability assumed by the insurer as stated in said schedule was conditioned upon the

auto races. The policy contained, among other provisions, the following:

"(1). To Indemnify the Assured Against Loss Arising or Resulting from Claims Made Upon the Assured for damages on account of bodily injuries, including death, at any time resulting therefrom, suffered or alleged to have been suffered as the result of an accident occurring while this policy is in force.

"A. By an employe or employes of the Assured on account of the prosecution of the business, trade, or profession described in the Schedule of Statements, while within or upon the premises described therein, or elsewhere when engaged in the discharge of any duty in connection with said business, trade or profession of the Assured. Drivers, chauffeurs and their helpers included, while engaged in work upon the premises described in the Schedule of Statements.

"B. By any person or persons not employed by the Assured while within or upon the premises stated in the Schedule, or upon the sidewalks, ways or premises adjacent thereto, except that accidents caused by drivers and chauffeurs and their helpers are excluded when occurring away from the premises as described in the Schedule."

"When Company May Be Sued.

"Condition J. No action shall lie against the Company under the Indemnity Clause herein, unless brought by and in the name of the Assured for loss actually sustained and paid in money by the Assured in satisfaction of a judgment after trial of the issue. No action shall lie against the Company under any other agreement herein, unless brought by and in the name of the Assured for money actually paid by him. In no event shall any action lie against the Company, unless brought within two years after the right of action accrues. The Company does not prejudice by this condition any defense to any such action in which it may be entitled."

The material parts of Section 8940 and the whole of Subsection 5-e of said section of the Code of 1927 are as follows:

"Kinds of insurance. Any company organized under this chapter or authorized to do business in this state may: * * *

"5. * * * e. Insure against liability for loss or expense arising or resulting from accidents occurring by reason of the

472

*ownership, maintenance,* or *use* of automobiles or other convey-
ances, resulting in personal injuries or death, or damage to
property belonging to others, or both, and for damages to as-
sured's own automobile when sustained through collision with
another object; provided, that should an execution on a judg-
ment against the insured be returned unsatisfied in an action
by a person who is injured or whose property is damaged, when
such *owner* or *operator* has *insured his liability* for such per-
sonal injury or damage, the judgment creditor shall have a right
of action against the insurer to the same extent that such *owner*
or *operator* could have enforced his claim against such insurer
had such *owner* or *operator* paid such judgment.''

The sole question raised by the demurrer and discussed
by counsel goes to the scope and nature of the thing which the
appellant assumed to do in its policy. It is the contention of
the appellant that its contract is one of indemnity only and that
by its contract it agreed only to reimburse the insured for such
sums as the insured may have paid in satisfaction of judgments
secured against the insured.

As against this contention of appellant's, it is strongly
urged by appellee that appellant's sole authority to do business
in this state, as appears from the record of the Insurance Com-
missioner, is under Chapter 404 of the Code of 1927. Particular
reliance is placed by appellee upon the provisions of subsection
5-e, Section 8940, Code of 1927, which is hereinbefore quoted.

I. We have hereinbefore set out certain provisions of the
contract marked (1) A and B and ''When Company May Be
Sued.''

The distinction between ''indemnity against loss'' and ''in-
demnity against liability'' in insurance contracts is not always
kept clearly in mind. The term ''indemnity insurance'' is ap-
plied to contracts which provide indemnity against loss and not
the contracts which provide for indemnity against liability, the
latter being called ''liability insurance.'' The distinction be-
tween these two forms of contract is very clearly set up by
Simpson in his very recent work on ''The Law Relating to
Automobile Insurance,'' issued in 1928. Section 286 reads as
follows:

''There is a well recognized difference between contracts of

indemnity against loss and contracts of indemnity against liability. In the former the insurance company does not become liable until the loss has actually been suffered, and the amount of the insurance does not become available until the insured has paid the loss, whereas in the latter the obligation of the insurance company becomes fixed when the liability attaches to the insured. Klotzbach v. Bull Dog Auto Fire Ins. Assn., (1924) (Mo. App.) 267 S. W. 39.''

A still more recent textbook entitled ''Sunderlin on Automobile Insurance,'' issued in 1929, Section 786, contains the following statement of the law:

'' 'No Action' clause. Indemnity policy. * * * The provision oftentimes contained in the automobile indemnity policy that 'no action shall lie against the company to recover for any loss * * * or expense under this policy unless it shall be brought by the assured for loss * * * or expense actually sustained and paid in money by him after actual trial of the issue,' or words to that effect, by the weight of authority, creates an obligation of indemnity as distinguished from liability, and, under such conditions, the insurance company is not liable to the claimant unless and until the liability is established by a judgment and that judgment is paid by the assured. Such is the rule in a great many liability insurance cases, other than automobile, where the policies contained the 'no action' clause.''

In Cushman v. Carbondale Fuel Co., 122 Iowa 656, this court had before it a contract which provided ''that no action should lie against the company for loss under the contract, unless brought 'by the assured himself to reimburse him for loss actually sustained and paid in satisfaction of a judgment after trial of the issue.' ''

In commenting on the policy, this court said:

''The obligation of the guarantee company was for the protection of the fuel company alone. The plaintiff was not a party to the contract, and had no legal rights thereunder. While the policy provided that the guarantee company might appear and defend for the fuel company in any action brought against it for personal injuries, such provision was for the protection of

the guarantee company alone, and imposed no liability upon it beyond the terms of the contract. * * * The only obligation of the guarantee company was to indemnify the fuel company against a 'loss actually sustained and paid in satisfaction of a judgment after trial of the issue.' This covenant is as explicit and certain as language could well make it, and, as between the parties to the contract, no recovery could be had against the guarantee company because the judgment against the fuel company was not paid, and consequently the covenant was not broken. Wilson v. Smith, 23 Iowa 252; Cousins, Sheriff v. Paxton & Gallagher Co., 122 Iowa 465," and other cases.

See also Aplin v. Smith, 197 Iowa 388; Globe N. F. Ins. Co. v. American Bonding & Casualty Co., 198 Iowa 1072.

In Shea v. United States Fidelity Co., 120 Atlantic 286 (Conn.), that court had before it a contract very similar to the one at bar. It agreed:

"To indemnify the assured against loss from the liability imposed by law upon the assured for damages, on account of bodily injuries or death suffered by any person as a result of an accident occurring while the policy is in force by reason of the ownership, maintenance, or use of the automobile described therein." The insurance company agreed "To defend in the name and on the behalf of the assured."

The company reserved the right to settle, and the contract contained a "No action" clause such as the one at bar. In the case, as here, the plaintiff claimed that because the insurance company took charge of the action and conducted the defense in behalf of the assured, it, the defendant, was liable to the plaintiff on the judgment procured by the plaintiff against the assured. The court said:

"Construing this policy as its language compels, we hold that the agreement to defend does not mean to defend successfully; that the contract is one of indemnity against loss and not against liability; that the injured person has no legal or equitable ground of recovery, where there is nothing due the assured under the terms and conditions of the policy; that condition G requires payment of the judgment against the insured before liability arises against the insurer and is a condition precedent

to recovery; that, where garnishee process of attachment is available, that method and not a claim of a right in equity is the method by which the injured person should attempt to secure whatever sum may be due the assured under the policy; that an adjudication of bankruptcy against the insured during the pendency of such an action does not create rights in the injured person against the insurer. Policies of indemnity with substantially identical terms and conditions as this policy are in extensive use, and there have been numerous cases before the courts where all the questions involved in this appeal have been passed upon. The courts have held, with practical unanimity, that the construction claimed by the plaintiffs cannot be upheld. The following are typical cases sustaining the position taken by us in this opinion: Connolly v. Bolster, 187 Mass. 266, 72 N. E. 981; O'Connell v. Railway Co., 187 Mass. 272, 72 N. E. 979; Frye v. Gas & Elec. Co., 97 Me. 241, 54 Atl. 395, 59 L. R. A. 444, 94 Am. St. Rep. 500; Eberlein v. Fidelity Co., 164 Wis. 242, 159 N. W. 553; Stenbom v. Brown-C. Co., 137 Wis. 564, 119 N. W. 308, 20 L. R. A. (N. S.) 956; Herbo-Phosa Co. v. Phil. Co., 34 R. I. 577, 84 Atl. 1093; Cushman v. Fuel Co., 122 Iowa 657; 98 N. W. 509; Ford v. Aetna Ins. Co., 70 Wash. 29, 126 Pac. 69; Luger v. Windell, 116 Wash. 375, 199 Pac. 761; Goodman v. George Life I. Co., 189 Ala. 130, 66 South. 649; Allen v. Aetna Life I. Co., 145 Fed. 881, 76 C. C. A. 265, 7 L. R. A. (N. S.) 958. As to bankruptcy, see 164 Wis. 244, 159 N. W. 553. As to equity of the injured, see, 122 Iowa 657, 98 N. W. 509.''

In Glatz v. Kroeger Bros., 183 N. W. 683 (Wis.), the court had before it a policy whereby it agreed to indemnify the assured against ''loss by reason of the liability imposed by law upon the assured for damages on account of bodily injuries, including death, at any time resulting therefrom, accidentally suffered or alleged to have been suffered as the result of an accident occurring while this policy is in force.'' The policy also provided a ''No Action'' clause which is known as ''Condition E'' of the policy.

The court said:

''We are unable to conceive more explicit terms in which condition E could have been phrased to express the idea that no liability shall exist under the policy by the company to the

476

assured until the assured has sustained a loss covered by the policy and has been paid by him in money, or for money expended by him under the policy. The terms of this condition clearly make the contract one of indemnity and must be so regarded within the decisions of this and other courts. Eberlein v. F. & D. Co., 164 Wis. 242, 159 N. W. 553; Stenbom v. Brown-Corliss Co., 137 Wis. 564; 119 N. W. 308, 20 L. R. A. (N. S.) 956; Wisconsin Zinc Co. v. F. & D. Co., 162 Wis. 39, 155 N. W. 1081, Ann. Cas. 1918C 399; Allen v. Aetna L. Ins. Co., 145 Fed. 881, 76 C. C. A. 265, 7 L. R. A. (N. S.) 958; Connolly v. Bolster, 187 Mass. 266, 72 N. E. 981.''

The plaintiff in that case also contended that because the insurance company undertook the defense of the action in the name of the assured, it was liable to the plaintiff on the judgment. The court held to the contrary.

For an exhaustive consideration of this subject, see Combs v. Hunt (Georgia Casualty Co.), 125 S. E., 661 (Va.).

II. Having in mind this well-defined and broadly recognized distinction between these two kinds of insurance, we now come to a consideration of the contention of the plaintiff (appellee) that Section 8940, Subsection 5-e of the Code of 1927 makes the defendant company liable to the plaintiff on his judgment secured against the insured. We have hereinbefore quoted the material portions of said Section 8940 and Subsection 5-e. There is but a single proposition presented for decision in this case, to wit:

Is the liability of the insurer, the defendant company, to be determined under the provisions of Subsection 5-e of Section 8940 of the Code of 1927, or is the contract in suit, as definitely expressed in its terms, one of *indemnity only*? Manifestly, the purpose of the Amusement Company was to obtain a policy of insurance which would indemnify it against any possible loss or damage that might result from the automobile races, but only when it had made payment thereof. For the purposes of this case, it is not definitely pleaded that the Amusement Company owned any automobiles or that any of them were to be used in these automobile races. The Amusement Company agreed ''to have present for said automobile races seven (7) racing cars and professional drivers and to furnish a program of six (6) events.''

This is the language of the petition. It is not pleaded that the automobiles used in the races were the automobiles of the Amusement Company. It rather, inferentially at least, appears that the Amusement Company was employing professional race drivers with their cars for the purpose of the races.

It will be observed from what we have already said that the policy, by its definite and specific provisions, was designed to be one of indemnity only. There is no ambiguity in the language of the contract. It not only clearly and definitely contemplates liability only for "loss actually sustained and paid in money by the assured in satisfaction of a judgment after trial of the issue," but such is the specific provision thereof. The appellee is not the assured but the judgment plaintiff. Unless, therefore, the burden assumed by appellant, under and by the terms of its contract with the Amusement Company, is that contemplated and referred to in subsection 5-e of Section 8940 of the Code of 1927, it is obvious that the demurrer should have been sustained. Appellee's whole case is predicated upon this and other provisions of Chapter 404.

The engagement of the Amusement Company with the Fair Association required it to put on a number of automobile races for the pleasure and entertainment of the appellee and guests of the Fair. The hazard of such entertainment is often very great and materially different from the hazard ordinarily assumed by the owner of an automobile in operating the same upon the public highways. An admission fee was charged by the Fair Association. Its purpose was to provide amusement and entertainment for the public. Appellee and guests attending the same went there for amusement and entertainment. Among the events featured by the program were the automobile races. The Amusement Company naturally desired to be indemnified against loss or damage which it might suffer and be compelled to pay as the result of the races. The whole scheme and contemplation of the parties related to and involved the putting on of an entertainment and amusement program for the pleasure of the public. The races were run upon a track provided by the Fair Association and not upon the public highway.

It is difficult to conceive how the facts of this case can be brought within the provisions of the statute quoted. The specific language of the statute is: "Insure against liability for loss or

expense arising or resulting from accidents occurring by reason of the ownership, maintenance, or use of automobiles.'' The injuries received by appellee were from the operation of a racing automobile in a racing contest put on and featured, as stated above, on a race track, not on any highway. The contract of the Amusement Company with the Fair Association and the explicit terms of the policy contemplated and provided for the extra hazards, use and operation of automobiles. There is nothing in the statute which in any way, by specific provision or necessary implication, could apply to the facts of the present case. The petition charges both the Amusement Company and the Fair Association with negligence. To bring the terms of the policy within the provisions of the statute, many of its terms must be eliminated and violence done to most that remains.

Condition J, hereinbefore quoted, commonly known in the authorities as the ''No Action'' clause, clearly specifies that no suit shall be brought against the insurer, the defendant company, ''unless brought by and in the name of the assured (the Amusement Company) for *loss actually sustained and paid in money by the assured* (the Amusement Company) in satisfaction of a judgment after trial of the issue.'' The plaintiff (appellee) was not a party to the contract.

It is too obvious for discussion that neither the insurer nor the assured contemplated the liability created by the statute, Section 8940, Subsection 5-e. The circumstances and relation of the parties naturally excluded consideration of the statute. This being true, it could not be properly said to be a part thereof. Whether or not appellant was authorized to make the contract in question is material only in so far as it has bearing, if it has such bearing, upon the interpretation to be given to the instrument. The only interpretation necessary to a decision of the question involved is to determine whether appellee may maintain a direct action against appellant. To sustain such action is to necessarily nullify express provisions of the contract. Justification, if at all, may be found for appellee's position in the single fact that the validity of the contract will be presumed. This presumption, so far as it exists, is not conclusive and involves nothing more than the application of the law to the contract. All of the facts and circumstances clearly indicate that the contemplation of the

parties was *indemnity* only and not liability under the statute quoted.

The usual and ordinary operation of automobiles was not contemplated but excluded by the very terms of the contract. Whether the contract was legal between the insurer and the assured we have no concern. Unless appellee can maintain an action against the insurer, the validity or invalidity of the policy is immaterial.

A close examination of Subsection 5-e of Section 8940 of the Code of 1927 hereinbefore quoted, discloses that the insurance therein described is for the protection of persons generally who own, maintain or use automobiles, to the damage of others. The purpose of this section is to authorize insurance which enables the owner of an automobile to protect himself from liability arising from the operation or maintenance thereof. Clearly, it can have no application to *indemnity contracts*. Manifestly, it pertains primarily to automobiles used in the usual course on the highways.

The right of the injured party to maintain an action against the insurer under this statute is necessarily contingent upon the failure of the insured party to pay the damages. Once paid, the cause of action of the injured party is, of course, extinguished. Here the contract provides the insurance company is to pay only if and as the assured is compelled to and does pay.

The purpose in contemplation of the parties to the present contract was foreign to the provisions of this statute. The statute was designed and enacted for an entirely different purpose, equally clear and specific.

The policy in controversy was not designed to meet cases arising under the statute. It was designed to indemnify the Amusement Company against loss arising from the operation of automobiles in racing contests at the County Fair. The promoters of the Amusement Company merely sought to indemnify themselves against losses which might result in carrying out an amusement program inherently hazardous and dangerous.

As previously stated, the policy by its terms is limited to damages resulting from the automobile races and paid by the insured. Whether the contract was authorized by the statute is not material to the sole question presented for decision in this case. Unless the plaintiff has a cause of action under the statute,

he cannot recover and the demurrer should have been sustained. To interpret the contract contrary to the purpose for which it was entered into, contrary to the contemplation of the parties and to its definite and express terms and conditions so as to bring it within the terms of the statute and give appellee a cause of action, would be making a new and entirely different contract for the parties. This cannot be legitimately done by interpretation alone. If the contract is illegal because not authorized by the statute, it cannot be given legality by interpretation, which would completely nullify its terms as well as the liability definitely expressed therein. Moreover, the *proviso* in Subsection 5-e clearly refers to cases in which the owner or operator has insured his liability for personal injury or damage. It has no reference whatever to cases in which a party takes out insurance under the express terms of which he is to be indemnified if, for any reason, he is compelled to pay damages to some other party.

It would do violence to the language of the *proviso* in said Subsection 5-e to hold that it applies to cases in which the owner has indemnity insurance against loss with a "no action" clause in the contract: that is to say, a contract providing against losses actually paid by the insurer only and for which suit may only be brought by the insured.

In the case at bar, the parties had definitely agreed in writing that no action should lie against the insurance company unless "brought by and in the name of the Assured for loss actually sustained and paid in money by the Assured in satisfaction of a judgment after trial of the issue."

Clearly the plaintiff (appellee) has not stated a cause of action in his petition and the demurrer should have been sustained.

The Amusement Company is not here seeking to recover from the insurance company money paid out by it on a judgment after trial of the issue.

The cause must be, and is,—Reversed.

STEVENS, KINDIG, ALBERT, WAGNER, and DE GRAFF, JJ., concur.

MORLING, J. (dissenting)—The case was submitted to the trial court on demurrer to plaintiff's petition, which so far as

material alleges, in substance, that defendant is a Maryland corporation authorized to do business in Iowa by Subdivisions 2, 5, 7 and 8, Section 8940, and Subdivision 5, Section 8941, Code, 1924; that defendant issued to the World Amusement Service Association a policy of insurance (the material provisions of which are later set out); that plaintiff was injured by the negligence of the World Amusement Service Association of South Dakota by the operation of its automobile racing exhibition; that plaintiff brought suit for such injuries against the World Amusement Service Association, and that at all times after the suit was brought, and in all proceedings, The Amusement Association was represented by the attorneys and representatives of the defendant United States Fidelity & Guaranty Company; that plaintiff obtained judgment against the World Amusement Service Association on which execution was issued and returned partly unsatisfied; that such association is a South Dakota corporation, has no property within the State and is insolvent. The policy of insurance contains the following provisions:

"Statement 5: The company's liability for loss from an accident resulting in bodily injuries to or in the death of one person is limited to Five Thousand Dollars * * * Statement 13: The minimum premium for this policy is Four Thousand Dollars * * * United States Fidelity & Guaranty Company Baltimore, Maryland, * * * does hereby agree (1) To indemnify the assured against loss arising or resulting from claims made upon the assured for damages on account of bodily injuries, including death, at any time resulting therefrom, suffered or alleged to have been suffered as the result of an accident occurring while this policy is in force. * * * (2) To serve the assured by the investigation of accidents, adjustments of claims and in the name and on behalf of the assured the defense of suits which may be brought against him as the result of such accidents or alleged accidents whether groundless or not. Also by providing inspections and accident prevention service, all at the expense of the company in addition to the limits of liability stated in Statement 5 of the Schedule of Statements.

"Bankruptcy.

"Condition 1. If the business of the assured is placed in

the hands of a receiver, assignee or trustee, whether by the voluntary act of the assured or otherwise, this policy shall immediately terminate; but such termination shall not affect the liability of the company as to any accidents heretofore (theretofore?) occurring. * * * When Company May be Sued. Condition J. No action shall lie against the company under the Indemnity Clause herein, unless brought by and in the name of the assured for loss actually sustained and paid in money by the assured in satisfaction of a judgment after trial of the issue. No action shall lie against the company under any other agreement herein, unless brought by and in the name of the assured for money actually paid by him. In no event shall any action lie against the company, unless brought within two years after the right of action accrues. The company does not prejudice by this condition any defense to any such action in which it may be entitled.

"Special Statutes.

"Condition K. If any limitation set forth in the preceding conditions is prohibited by the statutes of the State in which this policy is issued, the said limitation shall be considered to be amended to agree with the minimum period of limitation permitted by such statutes. * * *

"Limits of Liability. Condition Q. The company's liability for loss under this policy shall be as set forth under Statement 5 of the Schedule of Statements. The expense incurred by the company in defending any suit including all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the company's liability as therein expressed, and any costs taxed against the assured, will be paid by the company irrespective of the policy limits therein stated. * * *

"Report of Accident. Condition A. Upon the occurrence of an accident the assured shall give written notice as soon as he has knowledge thereof, with the fullest information obtainable at the time, to the company at its home office or to an agent of the company. If a claim is made on account of such accident the assured shall give like notice thereof with full particulars. If thereafter any suit is brought against the assured to enforce such a claim, the assured shall immediately forward to the company every summons or other process as soon as the same shall have been served on him. The company reserves the right to

settle any claim or suit. Whenever requested by the company, the assured shall aid in securing information, evidence, and the attendance of witnesses; in effecting settlements; and in prosecuting appeals. The assured shall at all times render to the company, except in a pecuniary way, all co-operation and assistance within his power.

"Assumption of Liability. Condition D. The assured shall not voluntarily assume any liability; nor interfere in any negotiations or legal proceedings conducted by the company on account of any claim; nor, except at his own cost, settle any claim; nor, without the written consent of the company previously given, incur any expense except that he may provide at the time of the accident, and at the cost of the company, such immediate surgical relief as is imperative."

While defendant makes the. point (not further argued) "(3) This was a policy of general indemnity insurance and not a policy of automobile insurance. Iowa Code, Section 3940 (8940) Sub. 5e," we understand from the cases cited that defendant's meaning is that the insurance merely provided indemnity against loss to the Amusement Service Association and gave no cause of action to the person injured. Defendant points to no statute authorizing the policy unless it be Section 8940, Sub. 5e. The defendant turns his whole argument on the proposition that the insurance is against loss only, not against liability for loss, and for that reason is not within Section 8940, Sub. 5e, which declared:

"Any company * * * authorized to do business in this state may: 5. * * * e. Insure against liability for loss or expense arising or resulting from accidents occurring by reason of the ownership, maintenance, or use of automobiles * * * or damage to property belonging to others, or both, and for damages to assured's own automobile when sustained through collision with another object; provided, that should an execution on a judgment against the insured be returned unsatisfied in an action by a person who is injured * * * when such owner or operator has insured his liability for such personal injury or damage, the judgment creditor shall have a right of action against the insurer to the same extent that such owner or oper-

ator could have enforced his claim against such insurer had such owner or operator paid such judgment.''

One of the grounds of demurrer is that the petition shows that the contract was entered into in Illinois between a Maryland corporation and a South Dakota corporation and that the statutes of Iowa have no bearing upon it. The place of delivery of the completed policy is the place of the contract. Born v. Home Ins. Co., 120 Iowa 299. The petition does not show, and it cannot be assumed, that the contract is not one made and to be performed within the jurisdiction of this state. But assuming that the place of the contract is inferentially shown by the policy and riders to be in Illinois, nevertheless this Court does not take judicial notice of the laws of that state. If defendant claims the benefit of those laws as differing from the laws of the forum, it is for defendant to plead and prove such laws as a fact. The presumption is that the statutes of Illinois are the same as those of this state. Sieverts v. National Benevolent Association, 95 Iowa 710; Northern Finance Corporation v. Meinhardt, 209 Iowa 895; In re Warner's Estate, 209 Iowa 948; Tansil v. McCumber, 201 Iowa 20.

The point chiefly relied upon for reversal is that the court erred, ''In that the contract declared on was a contract of indemnity insurance and not of liability insurance, and no right of recovery was established in the plaintiff, and the plaintiff was not entitled to be subrogated to any rights of the assured and the assured had no right to recover under this policy of indemnity insurance.''

It is well understood that contracts to indemnify may be to indemnify against liability or to indemnify against loss.

The business of insurance is affected with a public interest. O'Gorman & Young v. Hartford Fire Ins. Co., 75 L. Ed. 324, 282 U. S. 251.

Defendant is a foreign insurance corporation. The state may altogether exclude it from doing business within the state or it may admit it to do business on such terms and subject to such conditions, not involving the surrender of federal constitutional rights, (United States v. Chicago, M. & St. P. R. Co., 75 L. Ed. 359), as the state may see fit to prescribe. Dixon v. Northwestern National Life Ins. Co., 189 Iowa 1268; 32 C. J.

989. The purpose of Section 8940, Sub-division 5e, is to authorize liability insurance. American Fidelity Co. v. Bleakley, 157 Iowa 442.

Defendant, therefore, issued the policy in suit and took the premium therefor, or its right to it, solely under the authority of that statute. The proviso of the statute (Sub-division 5e, Section 8940) is one which, in the interest of the public, the state has the power to enact as a condition to permitting foreign corporations to transact within the state the business therein authorized. Merchants Mut. A. L. Ins. Co. v. Smart, 267 U. S. 126, 69 L. Ed. 538; Railway Express Agency v. Virginia, 75 L. Ed. 450, 282 U. S. 440; Biller v. Meyer, 33 Fed. (2nd) 440.

The statute in the interest of the public should be reasonably and liberally construed. Stone v. Interstate Exchange, 229 N. W. (Wis.) 26; A. Rose & Son v. Zurich General Acc. & L. Co., 145 Atl. (Pa.) 813.

If the policy sued upon is one within the class which defendant denominates liability insurance, and if because thereof it is not within Subdivision 5e, defendant was wholly without authority to issue it. The defendant's position, therefore, comes to this: that it is not bound by the condition prescribed by the state to its admission to doing business in the state; that it is not bound by the terms of the very statute under which it issued the policy and collected the premium therefor. This position manifestly cannot be recognized. American Fidelity Co. v. Bleakley, 157 Iowa 442.

The terms required to be embodied in the contract by the statute authorizing the contract must be read into the contract and are as much a part of it as if specifically incorporated therein. Crozier v. Hawkeye Stages, 209 Iowa 313; Stone v. Interstate Exchange, 229 N. W. (Wis.) 26; Ducommun v. Strong (Wis.), 212 N. W. 289; 214 N. W. 616; Archer v. Equitable Life Assurance Soc., 218 N. Y. 18, 112 N. E. 433; Verducci v. Casualty Co. (Ohio), 117 N. E. 235; Green v. Martin (Ala.), 132 So. 882; Elliott v. Indemnity Ins. Co., 230 N. W. (Wis.) 87; 32 C. J., 1162.

The contract is one of liability insurance. 36 C. J. 1057; 32 C. J. 975. The purpose of Subdivision 5-e is to permit insurance against loss or expense resulting from liability not merely from accident. American Fidelity Co. v. Bleakley, 157 Iowa

442. The whole theory of liability insurance rests upon the existence of "liability." Various terms are loosely used in differentiating contracts of indemnity against liability from contracts of indemnity against loss. Whether the insurance or the indemnity is from liability or from loss it is one of indemnity, and the contract of liability insurance is in either case an indemnity contract. 36 C. J. 1057; 32 C. J. 975. By the statute defendant is authorized to "insure against liability for loss or expense arising or resulting from accidents occurring by reason of the ownership, maintenance, or use of automobiles or other conveyances, resulting in personal injuries or death * * *." The liability against which insurance is authorized includes personal injuries to the insured and damage to his own automobile. Thus the phrase "against liability for loss or expense" is not limited to liability to third parties. As respects the claims of third parties, there can be no loss and the insurer can be under no liability under the policy unless there is liability on the part of the insured because of which the loss is suffered. The word "liable" means not only "bound or obliged in law or equity; responsible; answerable," but "exposed to a certain contingency or casualty, more or less probable and, in modern use, of an undesired or harmful character;" (Webster's New International Dict.) "Having an aptitude or tendency; subject; exposed, as to the doing or occurring of something evil, injurious, or erroneous; as, we are constantly *liable* to accidents." Century Dict. "Liability" is "the state of being liable through obligation or duty; fixed or contingent responsibility; exposure to that which is or may be required * * * The state of being liable incidentally or by chance; exposure to that which is possible or probable; tendency, susceptibility. * * *" Century Dict.

The statute authorizes insurance against the insured's direct loss resulting from injury to his person or property and to loss resulting from injury to others. The authority to defendant to "insure against liability for loss" manifestly includes, and on its own contention has been so accepted by defendant as, authority to insure not only against liability to loss but against loss. The statute does not undertake to prescribe all the limitations and conditions of contracts which may be issued pursuant to its authority. It does, however, prescribe the one that, should execution on judgment against the insured be returned unsatisfied

in an action by the injured party when the owner has "insured his liability, * * * the judgment creditor shall have a right of action against the insurer."

"The liability" is the liability insurance against which is authorized, and includes, as has been said, insurance against loss. This is manifest from the language which gives the "right of action against the insurer to the same extent that such owner or operator could have enforced his claim against such insurer had such owner or operator paid such judgment." This expression would be meaningless if insurance against loss from actual payment of liability alone were in the legislative mind. It recognizes the possibility of the issuance of contracts such as defendant claims the one before us to be,—contracts of indemnity against loss; but when such a contract is issued, even though the loss has not been actually paid by the insured, the statute gives to the person suffering the loss the same right which the insured would have if he had actually paid the judgment. The plaintiff stands here, therefore, in the same position that the insured would have been in, had the insured paid the plaintiff's judgment. The purpose of the legislature undoubtedly was in the conservation and protection of the interest and rights of the public, to confer upon the holder of a judgment against the operator or owner of an automobile for damages for injuries resulting from the fault of the insured, substantial benefit from the insurance. It cannot be presumed that the legislature intended to offer to insurance companies an inducement to put such limitations in their policies as would make the policies and the legislation of no value to such creditor. See Edwards v. Fidelity Co. (La.), 123 So. 162. To adopt defendant's construction would be to offer to insurers that very inducement—an inducement which they would naturally accept, and thereby make the statute a dead letter. Subdivision 5b uses substantially the same language as Subdivision 5c, and is open to similar consequences from accepting defendant's contention. Section 8940 as a whole shows the legislative intention to authorize insurance against loss, whether resulting from ill health, from liability of practitioners of medicine, etc., from accidental discharge of water from automatic sprinkler, from accidents to employees, from operation of automobiles. The legislative thought was to

488

insure against loss and to specify the occasions of the losses for which indemnity was authorized.

The insured and the insurer may not by any terms that they agree to defeat, impair or modify the requirements of the statute enacted in the public interest. Malmgren v. Southwestern Ins. Co. (Cal.), 255 Pac. 512. The "no action clause" of the policy is in conflict with the statute, and so far as in conflict is void. Verducci v. Casualty Co. (Ohio), 117 N. E. 235. Even though the contract were for indemnity against loss only, the assured would have the right in equity to have the liability of the parties determined before payment. Sanders v. Frankfort Marine Acc. Ins. Co., 57 Atl. 655, 72 N. H. 485, 101 Am. St. Reports 688; Seeberger v. Wyman, 108 Iowa 527. The effect of the statute is to extend this right.

Moreover the liability of the defendant under the terms of the contract itself and the facts pleaded is one to indemnify.

The policy sued upon is a contract prepared by the defendant itself and sold by it to the insured. The insured must be presumed to have relied upon it as one intended to give to it the protection which its language and apparent purpose would ordinarily be accepted as giving. It is not to be presumed that the insured was knowingly purchasing a contract which contained such "jokers," self-contradictory or self-nullifying provisions as would make it of no effect. The language is to be construed most favorably to the insured and doubts and uncertainties resolved against the insurer. Githens v. Great American Ins. Co., 201 Iowa 266, 272; Kascoutas v. Federal Life Ins. Co., 193 Iowa 343; Tracy v. Palmetto Fire Ins. Co., 207 Iowa 1042, 1045.

By its contract the defendant undertook the defense of suits brought against the insured as the result of accidents whether groundless or not. Defendant reserved to itself and excluded from the insured the right to settle. The insured was relegated to a secondary position—that of assisting or co-operating. Insured had no right to interfere in negotiations or legal proceedings or to incur any expense except such as it provided at the time of the accident. The insured would naturally understand from the policy that the insurer undertook to relieve it from all liability or responsibility or exposure to loss. If the insured gave to the insurer the required notices, forwarded the

summons, and if requested by the insurer furnished the stipulated co-operation, defendant did undertake the forensic defense.

The unjustified refusal of insurer to conduct the defense of the action against the insured would have subjected the insurer to liability to damages as for a present breach of the contract. Jones v. Southern Surety Co., 210 Iowa 61; Kinnan v. Charles B. Hurst Co., 317 Ill. 251, 148 N. E. 12; In re Empire State Surety Co., 108 N. E. 825, 214 N. Y. 553; General Acc. F. & L. Assur. Corporation v. Butler's Ice Cream Factory (Tex.) 291 S. W. 674; 5 S. W. (2nd) 976; American Fidelity & Cas. Co. v. Williams (Tex.), 34 S. W. (2nd) 396; Hilker v. Western Automobile Ins. Co. (Wis.), 235 N. W. 413. Defendant did accordingly represent the insured in the action brought against it. Defendant's obligation to defend as the result of this contract did not end with an unsuccessful defense in court. Defendant was bound by the judgment suffered after the forensic defense which it had made. The insured by the recovery of final judgment sustained loss, for its liabilities were increased and the value of its estate diminished to the amount of the recovery. Malley v. American Indemnity Corporation, 297 Pa. 216, 146 Atl. 571. Moreover, defendant agreed to pay the expense of the defense, including interest upon its part of the judgment and costs, irrespective of the policy limitations. In these circumstances defendant's obligation to defend did not end until the judgment to the amount insured against was paid. Sanders v. Frankfort, Marine Acc. Ins. Co., 57 Atl. 655, 72 N. H. 485, 101 Am. St. Reports 688; Schambs v. Fidelity & Cas. Co., 259 Fed. 55.

By the terms of the policy also the termination of policy in case of a receivership, etc., was not to "affect the liability of the company as to any accident heretofore (theretofore?) occurring." Defendant's contention here in effect amounts simply to this: that though it is bound to pay the judgment to the amount of the policy limitation and though the insured is entitled, in paying over that amount to the plaintiff with one hand, to receive from defendant the amount in the other hand, defendant is not bound to pay unless this empty process, with no conceivable purpose, (unless it be to take advantage of an insolvent's inability to momentarily raise the required fund) is observed. A reasonable construction of the policy requires the court to disregard a construction which would lead to such ab-

surd results and to enforce the policy under the circumstances set forth in this petition according to its ostensible purpose as one protecting the insured from liability from the loss which the recovery of the judgment itself by the fact of its recovery occasions, as well as from loss from its actual payment. This is in accord with the decided trend of recent authority. Verducci v. Casualty Co. (Ohio), 117 N. E. 235; Schambs v. Fidelity & Cas. Co., 259 Fed. 55; Ducommun v. Strong (Wis.), 212 N. W. 289, 214 N. W. 616; Brucker v. Georgia Cas. Co., 32 S. W. (2nd) 1088 (Mo.); American Indemnity Co. v. Fellbaum, 263 S. W. 908 (Texas); West v. MacMillan, 301 Pa. 344, 152 Atl. 104; Graff v. Continental Auto Ins. Co. (Mo.), 35 S. W. (2nd) 926; Patterson v. Adan, 138 N. W. 281, 48 L. R. A. (N. S.) 184 (Minn.); Griffin v. General Cas. Co., 204 N. W. 727, 231 Mich. 642; Sanders v. Frankfort, Marine Acc. Ins. Co., 72 N. H. 485, 57 Atl. 655, 101 Am. St. Reports 688; Jedlicka v. Missouri Cas. Co. (Mo.), 14 S. W. (2nd) 535; Goerss v. Indemnity Co. (Mo.), 3 S. W. (2nd) 272; Malley v. American Indemnity Corporation, 297 Pa. 216, 146 Atl. 571; General Acc. F. & L. Assur. Corp. v. Butler's Ice Cream Factory (Tex,), 291 S. W. 674; 5 S. W. (2nd) 976; State ex rel. Indemnity Co. v. Daues, 13 S. W. (2nd) 1059 (Mo.); Kurre v. American Indemnity Co. (Mo.), 17 S. W. (2nd) 685; American Fidelity & Cas. Co. v. Williams (Tex.), 34 S. W. (2nd) 396; Davies v. Maryland Cas. Co., 154 Pac. 1116, 155 Pac. 1035, 89 Wash. 571; L. R. A. 1916D 395, 398; A. Rose & Son v. Zurich General Acc. Liability Co., 145 Atl. 813, 296 Pa. 206.

For collection of cases on the subject see 36 C. J. 1057; 14 R. C. L. 1321; 5 Perm. Supp. 3813.

The judgment appealed from is in harmony with the foregoing views and should be, I think, affirmed.

FAVILLE, C. J., and EVANS, J., concur in this dissent.